# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LYDIA OLSON, et al.,

*Appellants,*

v.

STATE OF CALIFORNIA, et al.,

*Appellees.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:19-cv-10956-DMG-RAO | Hon. Dolly M. Gee

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

Theane Evangelis
Blaine H. Evanson
Heather L. Richardson
Dhananjay S. Manthripragada
Alexander N. Harris
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
tevangelis@gibsondunn.com

*Attorneys for Appellants Lydia Olson, Miguel Perez,
Postmates Inc., and Uber Technologies, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

    I.    Plaintiffs Alleged That AB5's Irrational Exemptions of
        Similarly Situated Occupations Serve No Legitimate Purpose ............2

    II.   Plaintiffs Alleged that Running One's Own Business Is a
        Distinct Occupation and Outlawing It Is Irrational............................11

    III.  Plaintiffs Alleged that Forced Reclassification Would
        Unjustifiably Gut Their Contracts.......................................................16

    IV.  Plaintiffs Alleged that AB5 Singles Them Out for Legislative
        Punishment .........................................................................................23

    V.    The Court Should Order a Preliminary Injunction.............................28

CONCLUSION ................................................................................29

CERTIFICATE OF COMPLIANCE .....................................................31

CERTIFICATE OF SERVICE .............................................................32

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alatraqchi v. Uber Techs., Inc.*,
No. 11-42020-CT (Labor Comm. Aug. 1, 2012)................................17

*Alexander v. FedEx Ground Package Sys., Inc.*,
765 F.3d 981 (9th Cir. 2014) ...........................................................18

*Allen v. Bd. of Admin.*,
34 Cal. 3d 114 (1983) .......................................................................19

*Allied Concrete & Supply Co. v. Baker*,
904 F.3d 1053 (9th Cir. 2018) ...........................................................9

*Allied Structural Steel Co. v. Spannaus*,
438 U.S. 234 (1978)....................................................................20, 21

*American Society of Journalists & Authors, Inc. v. Bonta*,
15 F.4th 954 (9th Cir. 2021) ........................................................6, 10

*Animal Legal Defense Fund v. Wasden*,
878 F.3d 1184 (9th Cir. 2018) ...........................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................8

*Ass'n of Surrogates & Supreme Court Reporters Within City of N.Y. v. New York*,
940 F.2d 766 (2d Cir. 1991) .............................................................20

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*,
950 F.2d 1401 (9th Cir. 1991) .........................................................29

*Beaumont-Jacques v. Farmers Grp., Inc.*,
217 Cal. App. 4th 1138 (2013) ........................................................15

*Chorn v. Workers' Comp. Appeals Bd.*,
245 Cal. App. 4th 1370 (2016) ........................................................19

*Citizens Against a New Jail v. Board of Supervisors*,
63 Cal. App. 3d 559 (1976) .............................................................16

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985)..............................................................2

*Communist Party of the U.S. v. Subversive Activities Control Bd.*,
367 U.S. 1 (1961)................................................................25

*Conn v. Gabbert*,
526 U.S. 286 (1999)...........................................................12

*Consolidated Edison Co. of N.Y., Inc. v. Pataki*,
292 F.3d 338 (2d Cir. 2002) ..............................................23

*Cont'l Ill. Nat'l Bank & Tr. Co. of Chi. v. Washington*,
696 F.2d 692 (9th Cir. 1983) .............................................20

*Cornwell v. Hamilton*,
80 F. Supp. 2d 1101 (S.D. Cal. 1999)................................12

*Cotter v. Lyft, Inc.*,
60 F. Supp. 3d 1067 (N.D. Cal. 2015) ...............................17

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
920 F.2d 1496 (9th Cir. 1990) .............................................5

*Dep't of Agriculture v. Moreno*,
413 U.S. 528 (1973)..............................................................4

*Dittman v. California*,
191 F.3d 1020 (9th Cir. 1999) ............................................14

*Doe v. Uber Techs., Inc.*,
184 F. Supp. 3d 774 (N.D. Cal. 2016)................................17

*Elliott v. Bd. of Sch. Trustees of Madison Consol. Sch.*,
876 F.3d 926 (7th Cir. 2017) ..............................................20

*Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*,
459 U.S. 400 (1983).............................................................20

*Engquist v. Oregon Dep't of Agriculture*,
478 F.3d 985 (9th Cir. 2007) ..............................................14

*Equip. Mfrs. Inst. v. Janklow*,
    300 F.3d 842 (8th Cir. 2002) ..............................................................21

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*,
    880 F.3d 450 (9th Cir. 2018) .........................................................2, 14

*Foretich v. United States*,
    351 F.3d 1198 (D.C. Cir. 2003) .........................................................27

*Fowler Packing Co. v. Lanier*,
    844 F.3d 809 (9th Cir. 2016) ......................................2, 3, 4, 8, 9, 27

*Franceschi v. Yee*,
    887 F.3d 927 (9th Cir. 2018) ........................................................14, 25

*Gallinger v. Becerra*,
    898 F.3d 1012 (9th Cir. 2018) ..........................................................3, 4

*Garris v. Hanover Ins. Co.*,
    630 F.2d 1001 (4th Cir. 1980) ...........................................................20

*Gollnick v. Uber Techs., Inc.*,
    No. CGC-15-547878 (Cal. Super. Ct. Oct. 10, 2017) .......................18

*Greene v. Dayton*,
    806 F.3d 1146 (8th Cir. 2015) ...........................................................21

*Hu v. City of New York*,
    927 F.3d 81 (2d Cir. 2019) ...................................................................7

*Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*,
    909 F.3d 446 (D.C. Cir. 2018) ...........................................................27

*Lacey v. Maricopa Cty.*,
    693 F.3d 896 (9th Cir. 2012) ................................................................6

*Local 101 of the Am. Fed'n of State, Cnty. & Mun. Employees v. Brown*,
    2015 WL 5316296 (N.D. Cal. Sept. 11, 2015) ..................................18

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008) ............................................8, 9, 10, 15

*Murphy v. Kenneth Cole Prods., Inc.*,
    40 Cal. 4th 1094 (2007) ....................................................................17

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977)...................................................................23, 27

*O'Connor v. Uber Techs., Inc.*,
    82 F. Supp. 3d 1133 (N.D. Cal. 2015) ............................................17

*People v. Uber Techs., Inc.*,
    56 Cal. App. 5th 266 (2020) ...........................................17, 25, 28

*Ross v. City of Berkeley*,
    655 F. Supp. 820 (N.D. Cal. 1987)...........................18, 19, 21, 22

*RUI One Corp. v. City of Berkeley*,
    371 F.3d 1137 (9th Cir. 2004) ..................................................20, 21

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*,
    48 Cal. 3d 341 (1989) .......................................................................17

*Sacramento Cnty. Retired Emps. Ass'n v. County of Sacramento*,
    2012 WL 1082807 (E.D. Cal. Mar. 31, 2012).....................................7

*Sagana v. Tenorio*,
    384 F.3d 731 (9th Cir. 2004) ............................................................14

*San Francisco Taxi Coal. v. City and Cnty. of San Francisco*,
    979 F.3d 1220 (9th Cir. 2020) .....................................................9, 10

*SeaRiver Mar. Fin. Holdings v. Mineta*,
    309 F.3d 662 (9th Cir. 2002) .........................................23, 24, 25

*Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*,
    468 U.S. 841 (1984).....................................................................25, 26

*St. Joseph Abbey v. Castille*,
    712 F.3d 215 (5th Cir. 2013) ............................................................15

*State of Nev. Employees Ass'n, Inc. v. Keating*,
    903 F.2d 1223 (9th Cir. 1990) .........................................................22

*Uber Techs., Inc. v. Biafore*,
No. BS172429 (Cal. Super. Ct. July 2, 2018) ....................................................18

*Uber Techs., Inc. v. Dorr*,
BS172842 (Cal. Super Ct. Mar. 9, 2018) ..........................................................18

*United States v. Brown*,
381 U.S. 437 (1965)...........................................................................................26

*United States v. Graf*,
610 F.3d 1148 (9th Cir. 2010) ..........................................................................23

*United States v. Raines*,
362 U.S. 17 (1960).............................................................................................29

*Williamson v. Lee Optical of Okla., Inc.*,
348 U.S. 483 (1955)...........................................................................................10

*In re Workers' Comp. Refund*,
46 F.3d 813 (8th Cir. 1995) ..............................................................................19

STATUTES

Cal. Lab. Code § 2777 ................................................................................4, 5, 24

Cal. Lab. Code § 2779 ......................................................................................5, 24

Cal. Lab. Code § 2781 ...........................................................................................4

RULES

Fed. R. Civ. P. 1 ....................................................................................................8

CONSTITUTIONAL PROVISIONS

U.S. CONST. Art. I, § 10, cl. 1 .............................................................................23

## INTRODUCTION

Plaintiffs' complaint asserts serious constitutional challenges based on thoroughly alleged facts, and the government's response is (like the district court's ruling) largely just a disagreement with those facts. For example, the government assumes (contrary to the factual allegations) that the legislature must have had a good reason to treat workers who use the Uber or Postmates apps differently from those who use Wag! or TaskRabbit—and then argues (again, contrary to the factual allegations) that the legislature rationally withdrew protections from millions of workers while subjecting network companies to an unequal and punitive regime. It also waves away the allegations that being one's own boss is different from being an employee—and then concludes on that basis that AB5 does not deprive Plaintiffs of their right to pursue their chosen occupation.

The government will have the opportunity to dispute Plaintiffs' factual allegations at trial, but on a motion to dismiss they *must* be taken as true. The district court's dismissal of Plaintiff's complaint should therefore be reversed, and since the same legal errors underlie the court's denial of a preliminary injunction, the Court should order the district court to enjoin the enforcement of AB5.

# ARGUMENT

## I.  Plaintiffs Alleged That AB5's Irrational Exemptions of Similarly Situated Occupations Serve No Legitimate Purpose

AB5's irrational exemption scheme is unconstitutional, and the district court's ruling to the contrary disregarded, and at times directly *contradicted*, Plaintiffs' well-pleaded allegations in the complaint.

**1.** AB5 defies the central command of the Equal Protection Clause—that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Particularly as amended by AB2257, AB5 is riddled with arbitrary distinctions between similarly situated workers that neither have a "legitimate purpose" nor "promote[] that purpose." *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018).

This crazy quilt of legislative exemptions has only two conceivable justifications: the desire to punish app-based drivers and the network companies they use, and the pressure to cave "to the demands of … political constituent[s]." *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016). From the start, AB5's sponsor made clear that she was "open to changes"—including ones that would lead to the "'continue[d] … misclassif[ication]' of 'historically misclassified' workers, such as 'women of color'" (2-ER-076–77 (SAC ¶ 81))—but that she would never consider an exemption for "app-based ride-hailing and delivering giants" (2-ER-080 (SAC ¶ 85)). The legislature proceeded to grant exemptions "solely to obtain the

necessary political support to punish Plaintiffs," including a last-minute exemption for the newspaper industry "as a condition of AB5's passage." 2-ER-049–50, 2-ER-076 (SAC ¶¶ 13, 81). This irrational process denied Plaintiffs equal protection of the law because "legislatures may not draw lines for the purpose of arbitrarily excluding individuals" or for the purpose of securing political support for the bill's enactment. *Fowler Packing*, 844 F.3d at 815–16.

The government tries to sanitize the exemption process as merely "'accommodating one interest group'" instead of "'intentionally harming another.'" GovtBr.29 (quoting *Gallinger v. Becerra*, 898 F.3d 1012, 1021 (9th Cir. 2018)). That is a charitable way to describe "'back door' deals and political favors to industry groups." 2-ER-115 (SAC ¶ 189). However the government spins these political concessions, legislative classifications must serve legitimate state interests "other than to respond to the demands of a political constituent." *Fowler Packing*, 844 F.3d at 815.

These classifications are not a rational means of achieving any legitimate end. The government does not and cannot dispute that AB5 and AB2257 affirmatively *roll back* preexisting protections under the wage-order laws for millions of workers. *See* 2-ER-085–90 (SAC ¶¶ 95–101, 105). Millions of workers to whom *Dynamex* applied the ABC test for wage-order claims were, under AB5 and AB2257, put back under the *Borello* standard—the very regime the drafters of AB5 claimed harmed

workers. This is dramatically disparate treatment, and the Complaint alleges in detail how huge groups of disparately treated workers are, in fact, similarly situated.

For example, the exemptions cover "growth industries" that, according to the legislature, had "some of the highest misclassification rates … in the economy" (2-ER-063–64 (SAC ¶¶ 59, 62))—including construction truckers and subcontractors (Cal. Labor Code § 2781) and workers in the "hospitality" industry (*id.* § 2777(b)(2)(B)). This retreat from *Dynamex* to a more liberal classification test could hardly be justified as a way "to remedy the widespread misclassification of workers as independent contractors." GovtBr.22. Instead, the naked political favoritism on display in this case does "not survive even rational basis scrutiny." *Fowler Packing*, 844 F.3d at 816.

The government also suggests that discrimination against network companies is a legitimate motive unless Plaintiffs "properly allege that they are a 'politically unpopular group.'" GovtBr.29 (quoting *Gallinger*, 898 F.3d at 1020). It is true, of course, that a "desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973). But neither the Supreme Court nor this Court has held the converse— that animus is illegitimate *only* when directed at such a group. *See*, *e.g.*, *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184, 1201 (9th Cir. 2018). And the government ignores the factual allegation that Plaintiffs "remain politically

unpopular among California legislators and law enforcement officials charged with enforcing their laws." 2-ER-078 (SAC ¶ 84); *see, e.g.*, 2-ER-051, 2-ER-079, 2-ER-084–85, 2-ER-091, 2-ER-098–101 (SAC ¶¶ 16, 85f, 93, 110, 128, 131–33, 135) (statements of hostility toward Plaintiffs). After all, the fact that legislators have acted out of animus is what makes the targeted party *politically* unpopular in the first place.

Simply put, the legislature was dead-set on "singl[ing] out" Uber and Postmates, no matter how similarly situated they might be to other exempted companies. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1509 (9th Cir. 1990). The most blatant example comes from AB2257, which exempted any and all referral agencies that meet certain requirements but then carved out "delivery, courier, [or] transportation" services from the exemption. Cal. Lab. Code §§ 2777(b)(2)(C), 2779(c); *see also* AOB24–25 (collecting other inexplicable distinctions). The legislature added this carveout to slam the door shut on Plaintiffs after the district court concluded that "Uber Eats and Postmates would likely fall under the" referral exemption for "errands." 2-ER-197 (Prelim. Inj. Hr'g Tr. at 9:5–7). Its explicit purpose was to ensure there is no way "*Uber* will [be able to] just say" that it fits within an exemption. 2-ER-083–84 (SAC ¶ 92). As a consequence of this irrational line-drawing, TaskRabbit and Wag! (often called "Uber for dogs") can claim an exemption from AB5's adoption of the *Dynamex*

standard, while Uber and Postmates are excluded even though they use "nearly identical business models" to refer customers to service providers. 2-ER-048, 2-ER-074–75, 2-ER-089 (SAC ¶¶ 10, 77, 104). Such disparate treatment of similarly situated referral agencies has no conceivable (legitimate) justification.

**2.** As set forth in the opening brief, the district court disregarded the central factual allegations in Plaintiffs' complaint that detailed the irrationality of the AB5 exemption scheme.

The government responds that courts are not bound to accept "conclusions of law as true." GovtBr.31. That is true, but the allegations the district court rejected about exemptions for similarly situated industries were *factual*—allegations that, if proven true, would support a judgment and injunction in Plaintiffs' favor. *See, e.g.*, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 921 (9th Cir. 2012) (reversing district court's dismissal of selective-enforcement claim because other lawbreakers "were similarly situated if we accept the facts in the complaint as true").

The legislature articulated a series of factors that were supposed to govern whether a particular profession or industry should be exempted from the ABC test, and each of these factors presents a question of fact: "the workers' historical treatment as employees or independent contractors, the centrality of their task to the hirer's business, their market strength and ability to set their own rates, and the relationship between them and their clients." *American Society of Journalists &*

*Authors, Inc. v. Bonta*, 15 F.4th 954, 965 (9th Cir. 2021). The historical baseline in the on-demand economy, the centrality of the services to the referral process, and drivers' ability to set their own rates by soliciting referrals from multiple platforms at once (called "multi-apping") are all *factual* questions—not legal conclusions. *See* AOB27–30 (explaining how app-based drivers "satisfy the supposed 'hallmarks of independent contractors' identified in the legislative history").

The government also fails to heed the decisions that "have cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019). The government resists this line of cases as applicable only to "discrimination based on a protected class." GovtBr.31. Not so. Although a classification on account of a protected class calls for strict scrutiny of its justifications, the government cites no authority for the proposition that the "similarly situated" analysis is *factual* for discrimination based on race, but somehow *legal* for classifications subject to rational basis review. *See Sacramento Cnty. Retired Emps. Ass'n v. County of Sacramento*, 2012 WL 1082807, at *6 (E.D. Cal. Mar. 31, 2012) (accepting factual allegations that other party is similarly situated on rational basis review). In other words, statutes and case law do not tell a judge whether Wag! is similarly situated to Uber—answering that question requires factual findings based on evidence.

The government attempts to defend the district court's decision to go "beyond the pleadings to hypothesize a legitimate governmental purpose" for distinguishing between TaskRabbit and Wag!, on the one hand, and Uber and Postmates, on the other. 2-ER-138. But even on rational basis review, courts must "accept as true all factual allegations." *Fowler Packing*, 844 F.3d at 814 (internal quotation marks omitted). There is no exception for rational-basis claims; the same pleading standards apply in "'all civil actions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting Fed. R. Civ. P. 1). Accordingly, "courts must consider the propriety of the law in light of facts introduced into evidence, and not imagine hypothetical justifications for considering whether a challenged statute passes muster." PI Appeal (No. 20-55267) PLF Br. 7.

This case amply demonstrates the risks of judicial factfinding on a motion to dismiss, given that the district court made demonstrably incorrect findings. The court found that Wag! is not similarly situated to Uber because the "employment of dog walkers and errand-runners has not engendered any comparable misclassification lawsuits" to those against app-based drivers. 1-ER-008. But Wag! *has* been the subject of comparable misclassification litigation. AOB25–26.

**3.** The district court was wrong to short-circuit this case on a motion to dismiss. Even where "economic rights are at stake," the government cannot arbitrarily treat similarly situated groups differently. *Merrifield v. Lockyer*, 547 F.3d

978, 992 (9th Cir. 2008). The government relegates its attempt to distinguish *Merrifield* to a footnote. *See* GovtBr.33 n.14. But *Merrifield* fits this case to a tee. The law in *Merrifield* "undercut its own rational basis" by subjecting one subset of pest control to a restriction where another subset posed an equal or greater threat of harm. 547 F.3d at 992. Similarly, AB5 retracts existing protections against misclassification under *Dynamex* for similarly situated workers in favor of the more liberal *Borello* test—all in the supposed name of *stopping* misclassification. A rancher who wants to get his horses back does not start opening more barndoors.

Indeed, AB5 presents not only the irrationality of the distinction in *Merrifield*, but also the rank political favoritism of *Fowler Packing*. *See* 844 F.3d at 815. Such allegations plausibly showing that "the law lacks any legitimate reason for its adoption" are more than enough to survive a motion to dismiss. *San Francisco Taxi Coal. v. City and Cnty. of San Francisco*, 979 F.3d 1220, 1225 (9th Cir. 2020); *see also Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1066 (9th Cir. 2018) (noting that "the burden on Plaintiffs here to come forward with evidence that negates every conceivable basis for the law is much higher" at summary judgment than in "opposing a motion to dismiss").

The government's reliance on *American Society of Journalists* is misplaced for the same reasons. In that case, this Court held that organizations representing journalists, authors, and photographers had not alleged that AB5's classifications of

journalists "'border on corruption, pure spite, or naked favoritism lacking any legitimate purpose.'" 15 F.4th at 966 (quoting *San Francisco Taxi Coal.*, 979 F.3d at 1225). That is unsurprising, as the legislature offered special accommodations to freelance journalists who submit fewer than 35 pieces of work to a single entity. *Id.* at 959. But rather than seek a similar workable accommodation with network companies, the legislature singled out Plaintiffs for harsh and unwarranted treatment no matter how infrequently the drivers use the apps. Plaintiffs thus can (and do) allege that the legislature treated them worse than similarly situated referral agencies for no reason other than animus toward network companies. 2-ER-054–58, 2-ER-070–75 (SAC ¶¶ 35–41, 70–77). *American Society of Journalists* simply cannot be understood to uphold AB5 against challenges by the actual targets of the legislature's animus, premised on materially different factual allegations.

The government finally seeks refuge behind the abstract principle that courts defer to legislative classifications. GovtBr.27–28. The legislature may, of course, take incremental steps to address a larger problem. *See*, *e.g.*, *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955). But it may not undercut the stated policy aims of AB5 with arbitrary exemptions—rolling back protections for *millions* of workers—for the purpose of favoring political constituents and harming network companies. *See Merrifield*, 547 F.3d at 992. This is not a "return to *Lochner*-era review of economic legislation," as the government's *amici* hyperbolically claim

(Teamsters Br. 7); disparate and arbitrary treatment of similarly situated groups is just as unconstitutional in 2022 as it was in 1922 (*see* PI Appeal PLF Br. 4–13).

The complaint's allegations, taken as true, establish a violation of the Equal Protection Clause. Plaintiffs should have the opportunity to prove the facts they have alleged.

## II.    Plaintiffs Alleged that Running One's Own Business Is a Distinct Occupation and Outlawing It Is Irrational

Plaintiffs alleged that using AB5 to force reclassification deprives them of their right to pursue their chosen occupation. AOB39–43. The government responds that being a business owner is not an "occupation," just a "classification." GovtBr.34–37. The government is wrong on both the facts and the law.

On the facts, the government, like the district court, ignores Plaintiffs' well-pleaded factual allegations that being a business owner is an entirely different occupation from being an employee. AOB39–41. Business owners have different responsibilities, tasks, and relationships, not to mention the cultural, psychological, and even tax implications. Nor can Postmates and Uber turn drivers into employees while retaining all these features (even if they could hire them all). For many independent business owners—including two Individual Plaintiffs and many drivers who participated as *amici* in the first appeal—disabilities or family responsibilities make working the set hours required for traditional employment impossible. PI

Appeal App-Based Drivers Br. 23. The government has no meaningful response to these well-pleaded facts other than to disagree with them.

The government is also wrong about the law. Multiple cases overturning cosmetologist licensing schemes—all of which the government deems "inapplicable" (GovtBr.39)—in fact rejected a variant of the argument the government raises here: that hair-braiding is not a distinct "occupation" from cosmetology. *See*, *e.g.*, *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1106–07 (S.D. Cal. 1999). The alleged facts show that running a business is at least as different from working as an employee as hair-braiding is from hair-cutting. AOB40.

The government relatedly argues that "AB5 is not a 'complete prohibition' on Plaintiffs' ability to pursue any 'profession.'" GovtBr.36–37. But a law need not be a "complete prohibition" to be unconstitutional. The district court mistakenly lifted this language out of context from a case that held nothing of the sort. AOB39 n.7; *see Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (observing that a "brief interruption" of law practice as a result of a search warrant is not a "complete prohibition" on "practicing law"). If a state law had outright prohibited lawyers from litigating as solo practitioners (or vice versa, from joining together in law firms), *Conn* would have been a very different case. It should come as no surprise that numerous federal courts have invalidated occupational licensing laws that fall well short of complete prohibitions—laws that allow *anyone* who meets certain

requirements (such as a certain number of hours of study) to practice the profession—where those requirements are irrational. AOB41–42.

Moreover, Plaintiffs alleged that AB5 is a complete prohibition because Postmates or Uber have no feasible way to hire the hundreds of thousands of drivers using their respective platforms as employees. AOB42–43. California law provides that employees owe a "duty to loyalty" to their employers, including a duty not to compete. AOB40; *see* PI Appeal App-Based Drivers Br. 11–12 (worrying that duty of loyalty will prohibit multi-apping by drivers). The government's assertion that Postmates and Uber could simply offer drivers the same flexibility and autonomy if they were employees (GovtBr.38) blinks reality—and (just as importantly) ignores the factual allegations in the complaint. *See*, *e.g.*, 2-ER-120 (SAC ¶ 205); *see also* PI Appeal IWF Br. 11–16 (explaining that AB5 will have a disproportionate effect on workplace participation for women who prize flexibility).

In short, AB5 is no mere run-of-the-mill labor regulation. Nor does it continue *Dynamex*, which permitted drivers to operate as business owners so long as they were paid according to wage-order regulations. The government is using AB5 to forbid driver independence altogether—exactly what the legislature meant to achieve. AOB42.

The government's cases all fall wide of the mark. GovtBr.34–36. No one doubts, for example, that the government can impose narrow restrictions on

individuals *because of their misconduct*.  *See Dittman v. California*, 191 F.3d 1020, 1031–32 (9th Cir. 1999) (medical professionals must be current on child support and have "good moral character" and "the financial wherewithal to answer liability claims"); *Franceschi v. Yee*, 887 F.3d 927, 939 (9th Cir. 2018) (suspension of driver's license for tax delinquency did not impair ability to be a lawyer).  But the government interprets AB5 as prohibiting every driver—regardless of their conduct—from working for themselves.[1]  Nor does anyone dispute that "there is no constitutional right to engage in illegal employment, namely, prostitution."  *Erotic Serv. Provider*, 880 F.3d at 459; *see also Sagana v. Tenorio*, 384 F.3d 731, 741–43 (9th Cir. 2004) (upholding a guest worker program in the Marianas for nonresidents who otherwise lack the right to work in the United States).  Needless to say, transporting passengers and goods is legal.  And the government's final case concerns an alleged positive right to a government job—a situation where judicial review is "more constrained" than here.  *Engquist v. Oregon Dep't of Agriculture*, 478 F.3d 985, 997 (9th Cir. 2007).

The government's overarching submission is that Plaintiffs lack "protectable interests" in working as independent business owners because some state laws

---

[1] Ironically, *Franceschi* noted that suspension of a driver's license was of little importance because the plaintiff could still use "services such as Lyft or Uber."  887 F.3d at 938.  Yet the government is using AB5 to impair *exactly these services*.

"define whether a worker is an employee irrespective of the parties' attempt to define that status by contract." GovtBr.36. Again, however, the government assumes away the answer under the Due Process Clause. Even if an independent-contractor agreement might not have alone been "dispositive" before AB5 if the court found clear evidence that it was "subterfuge[]" (GovtBr.44), "an agreement expressly stating that the relationship created [was] that of independent contractor [would not be] lightly disregarded when both parties ha[d] performed under the contract." *Beaumont-Jacques v. Farmers Grp., Inc.*, 217 Cal. App. 4th 1138, 1144 (2013) (quotation marks omitted). Regardless, the question here is not whether pre-AB5 California law violated the right to pursue a chosen occupation; it is whether *AB5* does.

Finally, the government asserts that AB5 survives rational basis review because the legislature "*could* have had a legitimate reason for acting as it did" (GovtBr.40–41)—but the government does not even offer even a hypothetical reason. The government also notes a circuit split over whether economic favoritism is a legitimate state interest (GovtBr.40) while neglecting to mention that this Court is on Plaintiffs' side of that split—having explicitly held that it is *not* legitimate. *Merrifield*, 547 F.3d at 991 n.15; *see St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 n.38 (5th Cir. 2013).

The complaint alleges that creating an employee-or-nothing system *guts* the livelihoods of hundreds of thousands, *worsens* income inequality, and *erodes* the middle class. AOB42–43. Indeed, the People, exercising "the ultimate legislative power" of the State (*Citizens Against a New Jail v. Board of Supervisors*, 63 Cal. App. 3d 559, 563 (1976)) have declared as much by enacting Proposition 22. The legislature overreached by banning Plaintiffs' occupation—something that was made clear at the ballot box and should be made clear at the courthouse.

## III. Plaintiffs Alleged that Forced Reclassification Would Unjustifiably Gut Their Contracts

Plaintiffs alleged that the forced reclassification of their occupations under AB5 would seriously impair their contractual guarantees of independence and that AB5 cannot be justified under the searching review required for such a severe impairment. AOB43–50. The district court reversibly erred by disregarding Plaintiffs' factual allegations and dismissing this claim at the pleadings stage. *See* AOB44, AOB50.

**1.** The government responds primarily by arguing that forcing Plaintiffs into an employment relationship they specifically rejected is not a substantial impairment of their contractual obligations. GovtBr.44–47 & n.17. This assertion contradicts the allegations of the complaint, and cannot justify AB5's gutting of Plaintiffs' contracts in any event.

To begin, the government cannot deny that the provisions guaranteeing independence and rejecting an employment relationship are central terms of Plaintiffs' contracts. *See* AOB44–45. Instead, it argues that the Court can look the other way because Plaintiffs should have anticipated that the government could wipe out the core of their bargain on a whim. GovtBr.44–47 & n.17. But the complaint alleges that AB5 upset judicial and administrative precedent overwhelmingly *upholding* independent contractor arrangements between app-based drivers and network companies. *See* AOB46. The government's authority does not support its argument (also contrary to the factual allegations) that Plaintiffs expected the government to shred their contracts. GovtBr.41–42 n.7.[2]

Nor can AB5 be upheld by reference to the principle that courts look through the independent contractor label when used as a "subterfuge[]." GovtBr.44 (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d 341, 349 (1989)). This

---

[2] The California Court of Appeal decision the government cites was about Prong B of AB5, not *Borello*. *See People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266, 292 (2020). The government's remaining cases merely allowed cases to proceed past the pleadings stage (*Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 783 (N.D. Cal. 2016); *O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015)) or to trial (*see Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1078 (N.D. Cal. 2015)). The government also cites one outlier decision of a single Labor Commissioner, which is "entitled to no weight whatsoever" because Uber appealed to the superior court. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1116, 1120 (2007). In addition, a different California Labor Commission decision concluded that drivers who use Uber were independent contractors. *Alatraqchi v. Uber Techs., Inc.*, No. 11-42020-CT (Labor Comm. Aug. 1, 2012).

narrow rule against the enforcement of contractual provisions did not apply to Plaintiffs because (1) courts and other adjudicators had found at trial that app-based drivers were genuine independent contractors and (2) the Department of Labor had concluded that app-based drivers are not employees under a *Borello*-like analysis (2-ER-063–64 (SAC ¶ 61)).[3]  The government's reliance on *Borello* and *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981 (9th Cir. 2014), thus is a total non sequitur.  GovtBr.44.  *Alexander* says nothing about whether a contractual impairment—much less one the government uses to try to ban the option of being an independent business owner—is constitutional.

Because no "positive law encompassing the contract *at the time of its execution* provid[ed] sufficient notice" the contracts were invalid, these expectations were legitimate.  *Ross v. City of Berkeley*, 655 F. Supp. 820, 828–29 (N.D. Cal. 1987) (emphasis added); *see Local 101 of the Am. Fed'n of State, Cnty. & Mun. Employees v. Brown*, 2015 WL 5316296, at *7 (N.D. Cal. Sept. 11, 2015) ("declin[ing] to find as a matter of law at this stage of the proceedings that Plaintiff cannot assert a Contract Clause claim" given allegations that the state had not previously

---

[3] *See also Uber Techs., Inc. v. Biafore*, No. BS172429 (Cal. Super. Ct. July 2, 2018); *Uber Techs., Inc. v. Dorr*, BS172842 (Cal. Super Ct. Mar. 9, 2018); *Gollnick v. Uber Techs., Inc.*, No. CGC-15-547878 (Cal. Super. Ct. Oct. 10, 2017).

"mandat[ed] limits to retirement benefits for employees of local agencies at the time the [contract] was negotiated").

AB5's drafters recognized as much.  They adopted the ABC test precisely because they believed *Borello* "was weighted heavily against … trying to prove misclassification" (2-ER-124 (SAC ¶ 220)), and they carefully crafted exemptions to exclude Uber because *Borello* would govern if Plaintiffs fit within an exemption (2-ER-083–84 (SAC ¶ 92)).

**2.**    The government argues that, because employment law is a "highly regulated" space, Plaintiffs had no reasonable expectation that the legislature would not pull the rug out from under them.  GovtBr.46.  But courts do not "construe 'prior regulation' so liberally that nearly any legislative act in a particular area would effectively preempt all subsequent Contracts Clause challenges to impairments in the same industry."  *Ross*, 655 F. Supp. at 830 (collecting cases).  "Because the relevant documents provided that" Plaintiffs would be independent contractors rather than employers and employees, "it logically follows that the [Plaintiffs] had a reasonable expectation" they would not have an employer-employee relationship, and AB5 impairs those expectations.  *In re Workers' Comp. Refund*, 46 F.3d 813, 818 (8th Cir. 1995).[4]

---

[4] The court rejected the claims in *Chorn v. Workers' Comp. Appeals Bd.*, 245 Cal. App. 4th 1370, 1392–93 (2016), and *Allen v. Bd. of Admin.*, 34 Cal. 3d 114, 124

Thus, although States may have "historically regulated" employment, "a history of regulation is never a sufficient condition by itself …. The question is whether the nature of the regulation puts the party on notice that an entirely different scheme would likely be imposed." *Elliott v. Bd. of Sch. Trustees of Madison Consol. Sch.*, 876 F.3d 926, 936 (7th Cir. 2017) (quotation marks omitted). Courts do not expect contracting parties to anticipate legislation that "destr[oys] their [contracts'] primary purpose." *Cont'l Ill. Nat'l Bank & Tr. Co. of Chi. v. Washington*, 696 F.2d 692, 697–98 (9th Cir. 1983). Accordingly, courts regularly invalidate laws impairing employment-related contracts. *E.g.*, *Garris v. Hanover Ins. Co.*, 630 F.2d 1001, 1011 (4th Cir. 1980); *Ass'n of Surrogates & Supreme Court Reporters Within City of N.Y. v. New York*, 940 F.2d 766, 772 (2d Cir. 1991); *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 250–51 (1978). A compelled employment relationship is a greater impairment than the courts invalidated in any of those cases.[5]

_____

(1983), because the plaintiffs had not shown that the law actually affected any existing contracts. Here, Plaintiffs have submitted the contracts into evidence—and the government does not deny that AB5 eviscerates their central terms. 3-ER-507–20, 3-ER-537–87. Unlike *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 416 (1983)—where the contracts "expressly … provid[ed] that any contractual terms are subject to relevant present and future state and federal law," in recognition of the government's constant rejiggering of natural gas prices—the government has pointed to no terms in the contracts that would allow them to be voided at the State's whim. The government has not addressed the contracts' terms at all.

[5] *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004), did not hold that employment regulations are immune from Contracts Clause challenges.

**3.** Such a severe impairment demands a "careful examination" of AB5's reasonableness (*Allied Structural Steel*, 438 U.S. at 245; *see* AOB47–50)—an inquiry in which the government bears the burden (*see* AOB50).[6]

Yet again, the government asserts that "AB 5 has a legitimate state interest," but does not say what it is. GovtBr.51. And again, the complaint alleges that AB5 is neither necessary nor reasonable to achieve its stated goal of preventing the erosion of the middle class. *E.g.*, 2-ER-111 (SAC ¶ 173); 2-ER-125–26 (SAC ¶¶ 223–31). In any event, the goal of "leveling the playing field between contracting parties is expressly prohibited as a significant and legitimate public interest." *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 861 (8th Cir. 2002). And the ostensible goals of preventing "misclassification" and "wage theft" beg the question, because AB5 adopts a slurry of new classification tests (which will change who is owed "wages"

---

Rather, it held that wage and benefit regulations did not impair *a lease agreement* because no "provision of the lease agreement addresses payment to or employment benefits for [the] employees." *Id.* at 1147. Likewise, *Greene v. Dayton*, 806 F.3d 1146 (8th Cir. 2015), upheld a change in the "process" by which the government decided which homecare providers it would pay. *Id.* at 1148. The law did not impair the obligations of any existing contracts, and clients remained free to hire whichever homecare providers they wished so long as they did not bill the government. *See id.* at 1150.

[6] Contrary to the government's suggestion (GovtBr.43), this searching standard is unchanged even though AB5 impairs the obligations of private parties, rather than "the State's own obligations." *E.g.*, *Allied Structural Steel*, 438 U.S. at 245; *Ross*, 655 F. Supp. at 832.

as employees) rather than preventing misclassification under an existing test. 2-ER-064 (SAC ¶ 62); 2-ER-068–69 (SAC ¶¶ 67–68).

The evidently superior way to achieve the legislature's goals is to guarantee app-based drivers compensation, benefits, insurance, and worker protections while preserving app-based drivers' contractually guaranteed independence, not to force hundreds of thousands of them into rigid employment relationships or (worse still) out of work. 2-ER-117–18 (SAC ¶¶ 194–95). The legislature had such an option before it, but rejected it out of hand—only for the People to rebuke their representatives and declare that Californians have "the basic legal right … to choose to work as independent contractors with rideshare and delivery network companies." *Id.*; 2-ER-094–97 (SAC ¶¶ 120–24). The legislature needed to "seriously consider[]" this "less restrictive alternative[]." *Ross*, 655 F. Supp. at 834. It has never explained why it instead opted to threaten an entire industry's business model. *See State of Nev. Employees Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1228 (9th Cir. 1990) ("The State did not address plaintiffs' suggested alternatives.").

That AB5 specifically targets Plaintiffs confirms that the law is not reasonably necessary to serve any broad societal interest. AOB48–49. The government incredibly asserts that "Plaintiffs point to nothing in the statutory language or the legislative history that support this allegation of targeting." GovtBr.49–50. This ignores (for example) the bills' sponsor crafting an amendment to AB5, AB2257,

explicitly to prevent Uber from being able to claim that it fits within an exemption—while making it easier for other on-demand companies like TaskRabbit and Wag! to benefit from the same exemption.   2-ER-083–84 (SAC ¶ 92); 2-ER-089 (SAC ¶ 104).  Plaintiffs alleged that AB5 unjustifiably impairs their contracts.

## IV. Plaintiffs Alleged that AB5 Singles Them Out for Legislative Punishment

Plaintiffs also alleged that AB5 bears the three hallmarks of an unconstitutional bill of attainder: a law that "(1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial." *SeaRiver Mar. Fin. Holdings v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002).  The government does not contest the third element, and its arguments with respect to the first two elements are unavailing.[7]

---

[7] Although the government notes in passing that "this Court has not held that the Bill of Attainder Clause protects corporations" (GovtBr.52 n.19), this argument was not raised below and is forfeited (*see United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010)).  In any event, the prohibition that "[n]o State shall … pass any Bill of Attainder" does not make an exception for legislative punishment of corporations. U.S. CONST. Art. I, § 10, cl. 1.  Parliament historically targeted English boroughs, which are municipal corporations, with bills of pains and penalties.   *See Consolidated Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 348 (2d Cir. 2002); *see also Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 473–74 (1977) (bills of pains and penalties likewise prohibited by the Bill of Attainder Clause).  And as the Second Circuit has observed, the ban on bills of attainder—legislative determination of guilt without the process of judicial trial—is closely linked to procedural due process, a guarantee shared by individuals and corporations alike.  *See Consolidated Edison*, 292 F.3d at 347.

**1.** Plaintiffs alleged that the legislature specified them. The government retorts that "AB5 does not explicitly name any individual or class" because "the law applies generally, subject to exemptions." GovtBr.54–55. The Bill of Attainder Clause, however, is not an empty formalism, and "[a] statute need not identify an individual of group by name to incur suspicion." *SeaRiver*, 309 F.3d at 669–70. Any other rule would allow a legislature to punish individuals through the two-step process of enacting a general prohibition and a cascade of exemptions. Although AB5 masquerades as a law of "general applicability," the law is so thoroughly shot through with exemptions that AB5 in reality metes out punishment to an "easily ascertainable" class of network companies. *Id.* at 669.

AB5 is a transparent attempt to stamp out network companies for perceived wrongdoing. 2-ER-065–67 (SAC ¶ 64). Consider, for example, that Assemblymember Gonzalez beseeched City Attorneys "to file for injunctive relief on 1/1/20"—AB5's effective date—against network companies. 2-ER-062 (SAC ¶ 56). She even apologized to groups that were "merely 'caught up'" in the attempt to target network companies and promised that AB2257 would "fix AB 5 to focus on 'companies like Uber and Lyft.'" 2-ER-091 (SAC ¶ 110). AB2257 then further confirmed the singling out of Plaintiffs by explicitly excluding an easily ascertainable group of "delivery, courier, [or] transportation" services from the exemption for referral agencies. Cal. Lab. Code §§ 2777(b)(2)(C), 2779(c).

The government also contends that AB5 does not specify affected persons because the law punishes only future misclassification. GovtBr.55. Yet the government overlooks how the system of exemptions brands Plaintiffs as wrongdoers based on the legislators' perception of past "irrevocable conduct." *Franceschi v. Lee*, 887 F.3d 927, 943 (9th Cir. 2018). Even though Uber has made fundamental changes to its platform to comply with AB5, the "conspicuous absence of an express exemption for ride-sharing companies in the statutory scheme enacted by AB 5" was itself a reason the California Court of Appeal upheld an injunction against Uber's business model. *Uber*, 56 Cal. App. 5th at 297; *see also id.* at 297 n.18 (canvassing "statements by Assemblymember Gonzalez and others [that are] consistent with" the conclusion "that the Legislature 'targeted' ride-sharing companies"). Plaintiffs consequently cannot "escape regulation merely by altering the course of their own present activities" because the exemption process singled them out through a (misguided) legislative determination that Uber and Postmates had misclassified workers. *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 88 (1961).

**2.** AB5 satisfies all three tests for punishment under the Bill of Attainder Clause. *See Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*, 468 U.S. 841, 852 (1984). Notably, though, AB5 "need not satisfy all [three] factors to constitute a bill of attainder." *SeaRiver*, 309 F.3d at 673.

The government does not contest that AB5 imposes a *historical* form of punishment because a company faces the prospect of felony imprisonment and knee-buckling civil penalties for misclassifying workers. 2-ER-061–62, 2-ER-093–94 (SAC ¶¶ 54, 115–19). And the government hardly contests that AB5 reflects a *motivation* to punish network companies. The complaint is replete with factual allegations—which must be taken as true—that legislators perceive Plaintiffs as "bad actor[s]" for purportedly "misclassif[ying]" workers, engaging in "wage theft," and overall "skirt[ing]" the law. 2-ER-128 (SAC ¶ 241); *see, e.g.*, 2-ER-050, 2-ER-078–82 (SAC ¶¶ 13, 84–88). These punitive views are mistaken because Plaintiffs have done nothing of the sort. After all, the reason for the Bill of Attainder Clause is that legislators are "not so well suited as politically independent judges and juries to the task of ruling upon the blameworthiness of, and levying appropriate punishment upon, specific persons." *United States v. Brown*, 381 U.S. 437, 445 (1965).

The government devotes most of its attention to whether AB5 *functionally* constitutes punishment or "legitimate regulation of conduct." *Selective Serv. Sys.*, 468 U.S. at 851. According to the government, AB5 does not meet the functional test because the legislature "set out a broadly applicable employee classification standard to further the legitimate governmental ends of addressing the decline of the middle class and rise in income equality." GovtBr.56.

Again, the government ignores half of the equation. The legislature targeted network companies through the denial of exemptions as well as the adoption of the *Dynamex* test. The government does not even attempt to explain how exemptions for similarly situated referral agencies (such as TaskRabbit and Wag!) promote the middle class or combat income inequality. That is why this series of exemptions flunks the rational basis test, as explained above. *See supra* at 5–8. But at a bare minimum, these allegations establish a bill of attainder because the functional test, which is more exacting than rational basis review, "demands not some conceivable nonpunitive purpose, but rather an *actual* nonpunitive purpose." *Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*, 909 F.3d 446, 456 (D.C. Cir. 2018) (emphasis added); *see*, *e.g.*, *Foretich v. United States*, 351 F.3d 1198, 1223 (D.C. Cir. 2003). Plaintiffs have plausibly alleged the lack of an actual "legitimate justification"—that this scattershot set of exemptions was infused with both political favoritism and animus. *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 476 (1977).

This case is readily distinguishable from this portion of the *Fowler Packing* decision, where this Court held that "carve-outs" from an affirmative defense did not punish the plaintiffs because "*pre-existing* law" already established their "monetary exposures" under California wage laws. 844 F.3d at 819 (emphasis added). Here, in contrast, it was AB5—not preexisting law—that *both* exposed Plaintiffs to punishment *and* (along with AB2257) adopted an array of exemptions that marked

Plaintiffs as easy targets for government officials enforcing the legislative punishment. *See Uber*, 56 Cal. App. 5th at 297.

The allegations in this case establish a plain legislative intent to punish the on-demand economy by taking away their business model on pain of imprisonment and monetary penalty. Plaintiffs have sufficiently alleged an unconstitutional bill of attainder.

## V. The Court Should Order a Preliminary Injunction

The government does not dispute that, if the district court's dismissal order is reversed, its analysis of the likelihood of success in its order denying a preliminary injunction must be too. AOB58. The government notes that the district court concluded that the balance of equities and the public interest weighed against an injunction. GovtBr.60. But those conclusions also turned on the erroneous view that enforcing AB5 to force Plaintiffs into an employment relationship is a rational way to prevent misclassification and prevent inequality. *See* PI Appeal Chamber of Commerce Br. 18–20 (collecting examples that "demonstrate how, contrary to its stated purpose, AB 5 has caused workers and small businesses serious and sometimes devastating financial and personal harm"). And the government ignores the undisputed evidence that such enforcement would eviscerate the immense benefits independent work provides to consumers, workers, and the economy—a view of the public interest decisively embraced by the People in Proposition 22.

AOB60; *see* PI Appeal Economists Br. 13–14 (explaining that independent contractors value scheduling flexibility more than workers who opt for traditional employment arrangements).

At the end of the day, the deprivation of constitutional rights is always an irreparable harm and always against "the highest public interest." *United States v. Raines*, 362 U.S. 17, 27 (1960); *see*, *e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991). This Court therefore should order the district court to preliminarily enjoin the government from enforcing AB5.

## CONCLUSION

The Court should reverse the district court's orders denying a preliminary injunction and dismissing the case, and order the district court to enter Plaintiffs' requested preliminary injunction.

Dated: April 11, 2022              Respectfully submitted,

                                   */s/ Theane Evangelis*
                                   Theane Evangelis
                                   Blaine H. Evanson
                                   Heather L. Richardson
                                   Dhananjay S. Manthripragada
                                   Alexander N. Harris

*Attorneys for Appellants Lydia Olson, Miguel Perez, Postmates Inc., and Uber Technologies, Inc.*

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached motion is proportionately spaced, has a typeface of 14 points, and complies with the word limitations set forth in 9th Cir. R. 32-1 because it contains 6,886 words.

Dated: April 11, 2022

*/s/ Theane Evangelis*
Theane Evangelis

*Attorneys for Appellants Lydia Olson, Miguel Perez, Postmates Inc., and Uber Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 11, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 11, 2022

*/s/ Theane Evangelis*
Theane Evangelis