**No. 21-55757**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

LYDIA OLSON, et al.,
*Plaintiffs-Appellants*,

v.

STATE OF CALIFORNIA, et al.,
*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the
Central District of California, Case No. 2:19-cv-10956-DMG-RAO
Honorable Dolly M. Gee

_____

**BRIEF OF AMICI CURIAE CALIFORNIA LABOR FEDERATION,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, SERVICE
EMPLOYEES INTERNATIONAL UNION CALIFORNIA STATE COUNCIL,
UNITED FOOD AND COMMERCIAL WORKERS UNION WESTERN
STATES COUNCIL, AND STATE BUILDING AND CONSTRUCTION
TRADES COUNCIL OF CALIFORNIA IN SUPPORT OF PANEL
REHEARING OR REHEARING *EN BANC***

_____

Scott A. Kronland, CA #171693
Stacey M. Leyton, CA #203827
Robin S. Tholin, CA #344845
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
skronland@altber.com

*Attorneys for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

The amici curiae, the California Labor Federation, International Brotherhood of Teamsters, Service Employees International Union California State Council, United Food and Commercial Workers Union Western States Council, and State Building and Construction Trades Council of California, are not corporations and have no parent corporations. No publicly held corporation owns any stock in any of the amici curiae.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iii

INTEREST OF THE AMICI CURIAE ................................................. 1

INTRODUCTION .................................................................................. 2

BACKGROUND .................................................................................... 4

REASONS FOR GRANTING REHEARING ........................................ 5

   I.   The panel decision conflicts with controlling precedents about the application of the rational basis test to ordinary economic legislation .......... 5

       A.   Because there is a rationally conceivable basis for the challenged statutory distinction, the district court's judgment should have been affirmed ............................................................................... 7

       B.   Plaintiffs' allegations of animus do not change the relevant constitutional analysis ......................................................... 11

       C.   The legislators' statements relied on by the panel do not show animus ................................................................................. 12

  II.  Absent rehearing, the panel decision will create an avalanche of litigation and require lawmakers to censor themselves ................................. 15

CONCLUSION .................................................................................... 16

CERTIFICATE OF COMPLIANCE .................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abernathy v. DoorDash, Inc.*,
   438 F.Supp.3d 1062 (N.D. Cal. 2020) ................................................................8

*Adams v. Postmates, Inc.*,
   414 F.Supp.3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th
   Cir. 2020) ...........................................................................................................8

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*,
   15 F.4th 954 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2870 (2022) ..............3, 11

*Angelotti Chiropractic, Inc. v. Baker*,
   791 F.3d 1075 (9th Cir. 2015) .............................................................................6

*Animal Legal Def. Fund v. Wasden*,
   878 F.3d 1184 (9th Cir. 2018) .........................................................................3, 12

*Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*,
   356 F.3d 979 (9th Cir. 2004) ..............................................................................11

*Cal. Trucking Ass'n v. Bonta*,
   996 F.3d 644 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2903 (2022) ...................6

*City of New Orleans v. Dukes*,
   427 U.S. 297 (1976) ...........................................................................................15

*Dandridge v. Williams*,
   397 U.S. 471 (1970) ...........................................................................................11

*Dobbs v. Jackson Women's Health Org.*,
   142 S. Ct. 2228 (2022) .......................................................................................13

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ....................................................................................*passim*

*Fowler Packing Co., Inc. v. Lanier*,
   844 F.3d 809 (9th Cir. 2016) .............................................................................10

*Gallagher v. City of Clayton*,
   699 F.3d 1013 (8th Cir. 2012) ............................................................12

*Gallinger v. Becerra*,
   898 F.3d 1012 (9th Cir. 2018) ............................................................12

*Rodriguez v. United States*,
   480 U.S. 522 (1987)............................................................................10

*RUI One Corp v. City of Berkeley*,
   371 F.3d 1137 (9th Cir. 2004) ..............................................................8

*Ry. Express Agency v. New York*,
   336 U.S. 106 (1949)..............................................................................2

*SmithKline Beecham Corp. v. Abbott Lab'ys*,
   740 F.3d 471 (9th Cir. 2014), *reh'g denied*, 759 F.3d 990 (9th Cir.
   2014) ..................................................................................................11

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ............................................................13

*U.S. Dep't of Agric. v. Moreno*,
   413 U.S. 528 (1973)............................................................................13

*U.S. R.R. Ret. Bd. v. Fritz*,
   449 U.S. 166 (1980)............................................................................15

*United States v. O'Brien*,
   391 U.S. 367 (1968)............................................................................12

*Vance v. Bradley*,
   440 U.S. 93 (1979)..............................................................................15

*Wisconsin Educ. Ass'n Council v. Walker*,
   705 F.3d 640 (7th Cir. 2013) ............................................................12

**California Cases**

*Dynamex Operations West v. Superior Court*,
   4 Cal. 5th 903 (2018) ............................................................................4

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*,
    48 Cal. 3d 341 (1989) ......................................................................4, 5

**Federal Statutes and Regulations**

Fair Labor Standards Act of 1938
    29 U.S.C. §202 ...................................................................................10

**California Statues and Regulations**

Cal. Bus. & Prof. Code
    §7449(a) ................................................................................................9

Cal. Lab. Code
    §§2775–2785 ........................................................................................5
    §2777(b)(2)(C) .....................................................................................5
    §2802 ...................................................................................................7

**Other Authorities**

Assemb. Comm. on Lab. & Emp., AB 5, 2019–2020 Reg. Sess. (Cal. July
    5, 2019) ................................................................................................9

Daniella Cheslow, *Consumer Protection Bureau Aims to Roll Back Rule
    for Payday Lending*, NPR (Jan. 6, 2019),
    https://www.npr.org/2019/02/06/691944789/consumer-protection-
    bureau-aims-to-roll-back-rules-for-payday-lending ...........................14

Patrick Fort & Ruth Tam, *Gig Work: The Fine Print of Food Delivery*,
    WAMU 88.5 (June 10, 2021), https://wamu.org/story/21/06/10/gig-
    work-the-fine-print-of-food-delivery/.................................................7

Emmarie Huetteman, *Klobuchar Wants to Stop 'Pay-For-Delay' Deals
    That Keep Drug Prices High*, Senator Amy Klobuchar: Amy in the
    News (April 26, 2019),
    https://www.klobuchar.senate.gov/public/index.cfm/amy-in-the-
    news?ID=F3DDE591-458E-435C-95D6-F5B7594E2F5D ...............14

Mike Isaac, et al., *Uber Buys Postmates for $2.65 Billion*, N.Y. Times
    (July 5, 2020), https://tinyurl.com/y8fv66o6.......................................5

Press Release, Senator Mike Lee, *Sen. Lee Reintroduces UNSHACKLE Act* (Mar. 11, 2021), https://www.lee.senate.gov/2021/3/sen-lee-reintroduces-unshackle-act ...............................................................................14

Aarian Marshall, *With $200 Million, Uber and Lyft Write Their Own Labor Law*, Wired (Nov. 4, 2020), https://www.wired.com/story/200-million-uber-lyft-write-own-labor-law/ ..........................................................................14

Press Release, U.S. Congressman Jefferson Van Drew, *Reps. Van Drew, Harris Renew Calls for Windmill Construction Moratorium Following Recent Whale Deaths* (Feb. 2, 2023), https://vandrew.house.gov/media/press-releases/reps-van-drew-harris-renew-calls-windmill-construction-moratorium-following ................................14

## INTEREST OF THE AMICI CURIAE[1]

The amici curiae are labor organizations that supported California Assembly Bill No. 5 ("AB 5").

The California Labor Federation is a federation of more than 1,200 unions in California, representing 2.1 million union members in both the public and private sectors.

The International Brotherhood of Teamsters is a labor organization that represents 1.4 million workers across North America.

The Service Employees International Union California State Council is comprised of SEIU local unions that represent over 700,000 California workers.

The United Food and Commercial Workers Union Western States Council is a chartered body of the UFCW International Union made up of local unions that represent over 200,000 California workers throughout the food chain.

The State Building and Construction Trades Council of California is a federation of local unions, district labor councils, and local building and construction trades councils that collectively represent about 500,000 working men and women in the construction industry.

---

[1] This brief is filed with the consent of all parties. No party's counsel authored the brief in whole or in part or contributed money intended to fund preparing or submitting the brief. No person, other than amici curiae, their members, or their counsel, contributed money intended to fund preparing or submitting the brief.

## INTRODUCTION

This case should be reheard. The panel decision's analysis of the equal protection claim conflicts with decades of previously settled precedent about how to conduct rational basis review. If the decision stands, district courts and state and local governments in the Ninth Circuit will be swamped with equal protection challenges to ordinary economic legislation that cannot be dismissed on the pleadings. Moreover, legislators in the Ninth Circuit will have to self-censor, lest their entirely unobjectionable speech be portrayed as "animus" that taints legislative action.

The California Legislature had many rationally conceivable reasons for applying a stricter test for "employee" status to drivers who transport passengers and deliver goods than to workers who run errands, perform minor home repairs, or walk dogs. For example, the Legislature could conclude that drivers are in greater need of employee protections because they incur expenses for fuel and vehicle maintenance or because they are at greater risk of injury from vehicle accidents and criminal activity. Or the Legislature could conclude that an easy-to-apply test is necessary because of all the litigation about the employee status of rideshare and delivery drivers. Or the Legislature could decide to proceed on a step-by-step basis and view the misclassification of drivers as the more important problem. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Ry. Express Agency v. New York*, 336 U.S. 106, 110 (1949).

Because there are rational bases for the Legislature's action, the

judgment below should have been affirmed. Indeed, the panel decision recognizes that this Court "recently rejected an equal protection challenge to" the same statute in *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 957 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2870 (2022) (*ASJA*). Op. at 26. But the panel decision reasons that "***Plaintiffs' plausible allegations of Assemblywoman [Lorena] Gonzalez's animus against them distinguish the two cases***." Op. at 26 (emphasis supplied). This treatment of alleged legislative animus departs radically from controlling precedent.

Under the rational basis test, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Rideshare and delivery companies are not suspect classifications, so even actual animus—by the entire Legislature—would be irrelevant unless "the statute serves no legitimate governmental purpose." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018) (*ALDF*) (quoting *Mountain Water Co. v. Mont. Dep't of Public Serv. Regulation*, 919 F.2d 593, 598 (9th Cir. 1990)). But that is not this case: The statute's application of the ABC test for worker classification to drivers transporting passengers and goods serves the legitimate purpose of ensuring that these workers have legal protections afforded to California employees.

Equally to the point, a lawmaker's statements supporting regulation of an industry do not show "impermissible animus toward an unpopular group" or "fears about that group." *ALDF*, 878 F.3d at 1200 (citation and internal

quotation marks omitted). Legislators often make statements identifying problems in a certain industry or involving particular entities—that certain gig companies are exploiting workers, or drug companies are overcharging consumers, or environmental groups are blocking needed development. Such statements reflect views about public policy that the federal courts do not second guess. Under the panel decision's reasoning, however, such commonplace rhetoric would serve as evidence of irrational animus that taints legislation addressing worker classification, drug prices, or the reform of environmental laws. If the panel decision is not reheard, legislators in the Ninth Circuit will have to censor themselves or risk running afoul of the Equal Protection Clause.

## BACKGROUND

The California Supreme Court held in *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903 (2018), a case involving truck drivers, that the ABC test should be used to determine whether workers are "employees" for purposes of California's Wage Orders. *Dynamex* adopted the ABC test for the Wage Orders rather than the multi-factor balancing test for "employee" status set forth in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989), for purposes of workers' compensation coverage.

In September 2019, California's Legislature enacted AB 5 to codify the ABC test and to apply that test to most occupations for purposes of determining "employee" status under California's Labor Code, Unemployment Insurance Code, and Wage Orders. The following year, the Legislature amended AB 5 by enacting AB 2257 (2020). For convenience, both statutes are referred to

4

collectively here as "AB 5."

Under AB 5, workers in most industries and occupations are covered by the ABC test, while workers in some industries and occupations are covered by the multi-factor *Borello* test, and there are special rules for determining employee status in certain situations. *See* Cal. Labor Code §§2775–2785. As pertinent here, AB 5 provides that the employee status of workers performing services through "referral agencies" is determined pursuant to *Borello's* muti-factor test (if certain criteria are satisfied) but that such services do not include "services provided in an industry designated by the Division of Occupational Safety and Health or the Department of Industrial Relations as a high hazard industry … or … janitorial, delivery, courier, transportation, trucking, agricultural labor, retail, logging, in-home care, or construction services other than minor home repair." Cal. Lab. Code §2777(b)(2)(C).

## REASONS FOR GRANTING REHEARING

I.   **The panel decision conflicts with controlling precedents about the application of the rational basis test to ordinary economic legislation.**

Uber and Postmates[2] brought this case to challenge the application of ABC test to them as a violation of the Equal Protection Clause. They did not claim that AB 5 distinguishes between Uber/Postmates and competitors like Lyft/Instacart/DoorDash. It does not. Nor did they claim that AB 5 distinguishes

---

[2] On July 5, 2020, Uber agreed to purchase Postmates. Mike Isaac, et al., *Uber Buys Postmates for $2.65 Billion*, N.Y. Times (July 5, 2020), https://tinyurl.com/y8fv66o6.

between companies that provide transportation and delivery services through apps and those that use older technologies. It does not. *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 651 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2903 (2022)*. Rather, Uber/Postmates claimed that AB 5's exemption from the ABC test for certain "referral agencies" violates equal protection because the exemption could be available to a company like TaskRabbit or Wag! (if certain requirements are satisfied) but not to rideshare and delivery companies.

The issue therefore—as in any equal protection challenge to economic regulation "that does not draw a distinction along suspect lines such as race or gender"—is whether there is *any* conceivable rational basis for the distinction. *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015). "Moreover … it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Commc'ns,* 508 U.S. at 315. And the "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.*

"These restraints on judicial review have added force where"—as with a statute like AB 5—"the legislature must necessarily engage in a process of line-drawing." *Id.* (internal citation omitted). "Defining the class of persons subject to a regulatory requirement … inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id*. at 315-16 (internal

quotations and citation omitted).

### A. Because there is a rationally conceivable basis for the challenged statutory distinction, the district court's judgment should have been affirmed.

As the district court recognized, there are multiple, rationally conceivable reasons for AB 5's distinction between: (a) drivers for rideshare and delivery companies like Uber/Postmates and (b) workers who run errands, perform minor home repairs or walk dogs through platform companies like TaskRabbit and Wag! 1-ER-007-009. Additional rationally conceivable bases for the distinction were provided in a Labor amicus brief to the panel. *See* Dkt. 27.

*First*, the Legislature could conclude that drivers are more in need of employee protections. The drivers incur significant costs for gas, vehicle maintenance, automobile insurance, and insulated delivery bags.[3] By contrast, "the [TaskRabbit and Wag!] service providers may have their supplies provided by the client." 1-ER-008. California employee protections include the right to reimbursement for business expenses. Cal. Lab. Code §2802. The Legislature also could conclude that drivers are at greater risk of on-the-job injuries from vehicle accidents or criminal activity. California employee protections include workers' compensation. *Id.* §3200 et seq.

*Second*, the Legislature could conclude that it is more important to have an easy-to-apply test for "employee" status for the hundreds of thousands of

---

[3] *See* Patrick Fort & Ruth Tam, *Gig Work: The Fine Print of Food Delivery*, WAMU 88.5 (June 10, 2021), https://wamu.org/story/21/06/10/gig-work-the-fine-print-of-food-delivery/.

passenger transportation and delivery drivers because this issue has generated so much litigation. As the district court observed, "the transportation industry has historically experienced misclassification of drivers," as shown by the "sheer number of pre-AB 5 lawsuits against Uber alone," compared to the relative lack of such lawsuits against dog-walker and errand-runner companies. 1-ER-008.[4]

*Third*, the Legislature could conclude that companies like Uber and Postmates exercise a greater degree of control over drivers, so drivers have less independence in performing their jobs. Because errand-running, minor home repairs, and dog-walking "likely involve entering a client's home, the client and individual service provider likely exert more control over the service." 1-ER-008.

*Fourth*, the Legislature rationally could decide to roll out the ABC test in stages. "[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Beach Commc'ns*, 508 U.S. at 316 (internal quotations and citation omitted); *see also RUI One Corp v. City of Berkeley*, 371 F.3d 1137, 1155 (9th Cir. 2004). The gig economy—and rideshare and delivery network companies in particular— present harms to workers that could easily have seemed "most acute in the legislative mind." The Legislature stated that "[r]ecent research … finds some of

---

[4] Uber is not unique among app-based rideshare and delivery companies in the number of misclassification claims. *See Adams v. Postmates, Inc.*, 414 F.Supp.3d 1246, 1248 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) (5,257 individuals); *Abernathy v. DoorDash, Inc.*, 438 F.Supp.3d 1062, 1064 (N.D. Cal. 2020) (2,250 individuals).

the highest misclassification rates in the economy's growth industries, including home care, janitorial, trucking, construction, hospitality, security, and the app-based 'on demand' sector."  Assemb. Comm. on Lab. & Emp., AB 5, 2019–2020 Reg. Sess., at 2 (Cal. July 5, 2019).

Indeed, although Uber/Postmates argued that there is no relevant distinction between app-based rideshare or delivery drivers and app-based errand runners or dog walkers, the same companies sponsored California Proposition 22 (2020), which makes the exact same distinction.  Proposition 22 creates a new test for "employee" status that is available only to "app-based rideshare and delivery platforms," and not any other gig services like TaskRabbit and Wag!  Cal. Bus. & Prof. Code §7449(a).

The panel decision reasons that TaskRabbit and Wag! "have business models that are nearly identical to Uber and Postmates," Op. at 25, and that "[t]here is no indication that many of the workers in exempted categories, including those working for the app-based gig companies that are exempted, are less susceptible to being 'exploited by being misclassified as independent contractors,'" *id.* (quoting AB 5 §1(e)).  But the Legislature might have thought otherwise.  The Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices" or to subject them to "courtroom fact-finding."  *Beach Commc'ns*, 508 U.S. at 313, 315.[5]

---

[5] The panel decision faults the State's attorney for failing to offer rational reasons for the law at oral argument.  Op. at 25 n.11.  But those reasons were provided in the district court's decision and in the briefs, and this Court is charged

The panel decision also reasons that "the exclusion of thousands of workers from the [ABC Test] is starkly inconsistent with the bill's stated purpose of affording workers the 'basic rights and protections they deserve.'" Op. at 24 (quoting AB 5 §1(e).). That is incorrect. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice …." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). The Fair Labor Standards Act of 1938 ("FLSA"), for example, was adopted for the "stated purpose" of ameliorating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202, yet the Act contains numerous exclusions.[6]

---

with "imagin[ing] any conceivable basis supporting a law, even if not advanced by the government." *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 n.3 (9th Cir. 2016).

    [6] FLSA minimum wage and overtime requirements do not cover executive, administrative, and professional employees; outside salespersons; certain computer-related occupations; certain seasonal amusement or recreational establishments; certain small newspapers; seamen on foreign vessels; fishermen; newspaper delivery workers; certain farmworkers; casual babysitters; and companions to the elderly or infirm. Additional exemptions from overtime requirements apply to certain commissioned employees of retail or service establishments; auto, truck, trailer, farm implement, boat, or aircraft sales workers; certain parts-clerks and mechanics; railroad and airline employees; taxi drivers; certain motor carrier employees; seamen on American vessels; local delivery employees paid on trip rate plans; announcers, news editors, and chief engineers of certain non-metropolitan broadcasting stations; domestic service workers living in the employer's residence; motion picture theater employees; and farmworkers. U.S. Dept. of Labor, Handy Reference Guide to the Fair Labor Standards Act 5-6 (Sept. 2016), available at https://www.dol.gov/whd/regs/compliance/wh1282.pdf.

"[S]tate substantive labor standards, including minimum wages, are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market." *Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 990 (9th Cir. 2004), *amended*, No. 02-56735, 2004 WL 292128 (9th Cir. Feb. 17, 2004). "The problems of government are practical ones and may justify, if they do not require, rough accommodations ...." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (citations, internal quotation marks omitted).

### B. Plaintiffs' allegations of animus do not change the relevant constitutional analysis.

Rather than focusing on whether there are rationally conceivable bases for the challenged legislative distinction, the panel decision reasons that the district court erred in dismissing Plaintiffs' equal protection challenge because Plaintiffs plausibly alleged that the Legislature's decision not to exempt them from AB 5 "can be attributed to animus rather than reason." Op. at 25. The panel decision holds that, while this Court rejected an equal protection challenge to AB 5 in *ASJA,* "***Plaintiffs' plausible allegations of Assemblywoman [Lorena] Gonzalez's animus against them distinguish the two cases.***" Op. at 26 (emphasis supplied).

That holding conflicts with controlling precedent. For purposes of rational basis review, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Commc'ns*, 508 U.S. at 315; *SmithKline Beecham Corp. v. Abbott Lab'ys*, 740 F.3d 471, 482 (9th Cir. 2014), *reh'g denied*, 759 F.3d 990 (9th Cir. 2014) (internal quotation marks omitted) ("[C]areful consideration of [a statute's] actual

purpose and [the] failure to consider other unsupported bases is antithetical to the very concept of rational basis review.").

In *ALDF*, 878 F.3d at 1200, this Court held that even where "impermissible animus toward an unpopular group prompted the statute's enactment," the challenged law must still be upheld unless it *also* "serves no legitimate governmental purpose." *Id.*; *see also Gallinger v. Becerra*, 898 F.3d 1012, 1021 (9th Cir. 2018) (a legitimate basis for the law "on its own, prevents Plaintiffs from succeeding on their Equal Protection claim"); *United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("[T]his Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."); *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 654 (7th Cir. 2013) ("[A]nimus only invalidates a law when no rational basis exists."); *Gallagher v. City of Clayton*, 699 F.3d 1013, 1021 (8th Cir. 2012) ("a *Romer*-type [animus] analysis only applies where there is no other legitimate state interest for the legislation").

The application of the ABC test to rideshare and delivery drivers serves the legitimate interest of providing those workers with employee protections. For the reasons stated above, there are rationally conceivable reasons for the lines drawn in AB 5. As such, the panel decision erred by considering allegations about legislative motive.

## C. The legislators' statements relied on by the panel do not show animus.

The panel decision also erred by mischaracterizing statements supporting regulation of an industry as evidence of impermissible animus. The decision cites

statements in newspapers and on Twitter by Assemblywoman Gonzalez—the sponsor of AB 5—and two other legislators discussing the harms of misclassification the gig economy.  *See* Op. at 9-10, 25.  None of the statements show impermissible animus, which is a "bare … desire to harm a politically unpopular group."  *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

For example, the panel decision relies on Assemblywoman Gonzalez's statement to a newspaper that she is "open to changes in the bill next year, including an exemption for musicians—*but not for app-based ride-hailing and delivery giants*."  Op. at 26 (emphasis in original).  The decision also refers to tweets from Assemblyman Anthony Rendon characterizing the gig economy as "a continuation of hundreds of years of corporations trying to screw over workers," from Assemblywoman Buffy Wicks stating that "just because your employer uses a smartphone app, doesn't mean they should be able to misclassify you as an independent contractor," and from an unnamed Twitter user who sent a message *to* Assemblywoman Gonzalez.  Op. at 9-10, 12 n.7.[7]

None of these statements is evidence of a bare desire to harm a politically unpopular group.  The statements show only that some legislators believed that some gig economy companies were exploiting workers and that the problem

---

[7] Even if these statements did demonstrate animus, "[s]tray remarks of individual legislators are among the weakest evidence of legislative intent," *Tingley v. Ferguson*, 47 F.4th 1055, 1087 (9th Cir. 2022), and one cited remark is not from a legislator at all.  *See also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) ("Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole.").

merited legislative action. Such views are not *irrational.* Nor are gig companies like Uber/Postmates/Lyft/Instacart/DoorDash a "politically unpopular group" that cannot protect itself through the democratic process. Indeed, after adoption of AB 5, the same gig companies spent a record-setting $200 million on a ballot initiative, Proposition 22, to exempt themselves from the ABC test.[8]

Political discourse is replete with statements by elected officials that certain industries, business models, or interest groups are causing harm or need to be regulated.[9] Regardless of whether such views are well-founded or

---

[8] *See* Aarian Marshall, *With $200 Million, Uber and Lyft Write Their Own Labor Law*, Wired (Nov. 4, 2020), https://www.wired.com/story/200-million-uber-lyft-write-own-labor-law/ (noting that the campaign was "the most expensive in California history").

[9] *See, e.g.*, Emmarie Huetteman, *Klobuchar Wants to Stop 'Pay-For-Delay' Deals That Keep Drug Prices High*, Senator Amy Klobuchar: Amy in the News (April 26, 2019), https://www.klobuchar.senate.gov/public/index.cfm/amy-in-the-news?ID=F3DDE591-458E-435C-95D6-F5B7594E2F5D ("'We can stop this horrible practice where big pharmaceuticals pay off, they literally pay off generics to keep the prices and the competition off the market,' Klobuchar said. 'That's bad, and we can fix it.'"); Press Release, U.S. Congressman Jefferson Van Drew, *Reps. Van Drew, Harris Renew Calls for Windmill Construction Moratorium Following Recent Whale Deaths* (Feb. 2, 2023), https://vandrew. house.gov/media/press-releases/reps-van-drew-harris-renew-calls-windmill-construction-moratorium-following ("From the beginning, I have expressed my concerns and opposition with offshore windfarms moving forward without substantial evidence to show how it will affect our environment, our industries, and marine life."); Press Release, Senator Mike Lee, *Sen. Lee Reintroduces UNSHACKLE Act* (Mar. 11, 2021), https://www.lee.senate.gov/2021/3/sen-lee-reintroduces-unshackle-act ("NEPA has become a weapon used by special interests to make much-needed infrastructure and maintenance projects throughout our country prohibitively expensive."); Daniella Cheslow, *Consumer Protection Bureau Aims to Roll Back Rule for Payday Lending*, NPR (Jan. 6, 2019), https://www.npr.org/2019/02/06/691944789/consumer-protection-bureau-aims-to-

misguided, they do not provide a basis for the "judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

## II. Absent rehearing, the panel decision will create an avalanche of litigation and require lawmakers to censor themselves.

There is nothing unusual about AB 5. The statute is ordinary economic legislation. "[S]cope-of-coverage provisions are unavoidable components of most economic or social legislation." *Beach Commc'ns*, 508 U.S. at 316. "[T]he legislature must necessarily engage in a process of line-drawing." *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980). If Plaintiffs' allegations here are enough to get past a motion to dismiss, the floodgates will open throughout the Ninth Circuit for similar lawsuits challenging everything from environmental legislation distinguishing between sources of energy to any exception in the tax code. Moreover, the panel decision provides no guidance on how such lawsuits would be litigated. Would legislators be subject to discovery to determine their real motives? Would district judges decide on the wisdom of legislative classifications? *Cf. Vance v. Bradley*, 440 U.S. 93, 112 (1979) ("It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety.") (citation, internal quotation marks omitted).

The panel decision will have a chilling effect on legislative speech. If

---

roll-back-rules-for-payday-lending (quoting President Obama in 2016, warning "[i]f you're making that profit by trapping hardworking Americans into a vicious cycle of debt, you've got to find a new business model.").

individual lawmakers' Tweets about the need for regulation can provide a basis for overturning legislation they support, lawmakers will be better served by never communicating to their constituents about their legislative priorities and the harms they hope to fix.

## CONCLUSION

The petition for rehearing or rehearing en banc should be granted.

Dated: May 8, 2023

Respectfully submitted,

s/ *Scott A. Kronland*
Scott A. Kronland
Stacey M. Leyton
Robin S. Tholin
ALTSHULER BERZON LLP

*Attorneys for Amici Curiae California Labor Federation, International Brotherhood of Teamsters, Service Employees International Union California State Council, United Food and Commercial Workers Union Western States Council, and State Building and Construction Trades Council of California*

16

### UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

#### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** __21-55757_____

I am the attorney or self-represented party.

**This brief contains** ___3962_____ **words,** including _____ words manually counted

in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface

comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __*s/ Scott A. Kronland*_____**Date** ___5/8/2023_____
*(use* "s/[typed name]" *to sign electronically-filed documents)*

17