No. 21-55757

_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

LYDIA OLSON; MIGUEL PEREZ POSTMATES, INC., (Successor Postmates LLC); UBER TECHNOLOGIES, INC.,

*Plaintiff – Appellants,*

v.

STATE OF CALIFORNIA; ROB BONTA, in his capacity as Attorney General of the State of California,

*Defendants- Appellees.*

_____

**On Appeal from the United States District Court for the Central District of California, Case No. 2:19-cv-10956-DMG-RAO**

Honorable Dolly M. Gee

_____

AMICUS CURIAE BRIEF OF LOCAL GOVERNMENTS IN SUPPORT OF APPELLEES' PETITION FOR PANEL REHEARING OR REHEARING EN BANC

_____

BARBARA J. PARKER, CITY ATTORNEY (SBN 069722)
Maria Bee, Chief Assistant City Attorney (SBN 167716)
Zoe Savitsky, Supervising Deputy City Attorney (SBN 281616)
Divya Musinipally, Deputy City Attorney (SBN 316114)
Zarah Rahman, Housing Justice Attorney (SBN 319372)
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3601, Facsimile: (510) 238-6500
Email: dmusinipally@oaklandcityattorney.org

*Attorneys for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

The amici curiae, Oakland City Attorney, Los Angeles City Attorney, San Francisco City Attorney, and King County Prosecuting Attorney's Office, are not corporations and have no parent corporations. No publicly held corporation owns any stock in any of the amici curiae.

## <u>TABLE OF CONTENTS</u>

INTEREST OF THE AMICI CURIAE.................................................................8

INTRODUCTION ...........................................................................................10

ARGUMENT...................................................................................................12

I. The Panel Decision Misapplied Clear Ninth Circuit Precedent........................12

II. The Panel's Decision Puts Critical State and Local Legislation at Risk.........14

      A.     Legislation Regulating the Local Economy is Critical to the Functioning of Local Governments................................................14

      B.     Legislation Spurred by a Particular Industry or Actor Does Not Evidence Animus.........................................................................17

      C.     Local Governments Commonly Enact Legislation that Applies to Only Specific Businesses or Contains Significant Exemptions. ....19

CONCLUSION ..............................................................................................23

CERTIFICATE OF COMPLIANCE .....................................................................27

CERTIFICATE OF SERVICE.............................................................................28

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*,
 15 F.4th 954 (9th Cir. 2021)............................................................................ passim

*Angelotti Chiropractic, Inc. v. Baker*,
 791 F.3d 1075 (9th Cir. 2015)................................................................. 13, 14, 23

*Animal Legal Def. Fund v. Wasden*,
 878 F.3d 1184 (9th Cir. 2018)....................................................................17

*Brandwein v. Cal. Bd. of Osteopathic Exam'rs*,
 708 F.2d 1466 (9th Cir. 1983)....................................................................... 11, 14

*Cal. Trucking Ass'n v. Bonta*,
 996 F.3d 644 (9th Cir. 2021).................................................................10

*City of Cleburne v. Cleburne Living Ctr.*,
 473 U.S. 432 (1985) ...................................................................17

*City of New Orleans v. Dukes*,
 427 U.S. 297 (1976) ................................................................... 20, 22

*F.C.C. v. Beach Commc'ns, Inc.*,
 508 U.S. 307 (1993) ............................................................14

*Gallinger v. Becerra*,
 898 F.3d 1012 (9th Cir. 2018)................................................................. 13, 14, 22

*Ileto v. Glock, Inc.*,
 565 F.3d 1126 (9th Cir. 2009)....................................................................14

*International Franchise Ass'n, Inc. v. City of Seattle*,
 803 F.3d 389 (9th Cir. 2015)................................................................23

*Jackson Water Works, Inc. v. Pub. Utils. Comm'n*,
 793 F.2d 1090 (9th Cir. 1986)....................................................................... 11, 20

*Kahawaiolaa v. Norton*,
 386 F.3d 1271 (9th Cir. 2004)................................................................14

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008)........................................................ 12, 17

*Mountain Water Co. v. Mont. Dep't of Pub. Serv. Regulation*,
    919 F.2d 593 (9th Cir. 1990)...................................................17

*S.F. Taxi Coalition v. City & Cty. of S.F.*,
    979 F.3d 1220 (9th Cir. 2020)................................................. passim

*Shamrock Farms Co. v. Veneman*,
    146 F.3d 1177 (9th Cir. 1998)...................................................14

*Taylor v. Rancho Santa Barbara*,
    206 F.3d 932 (9th Cir. 2000)...................................................14

*Tingley v. Ferguson*,
    47 F.4th 1055 (9th Cir. 2022)................................................19

*Vance v. Bradley*,
    440 U.S. 93 (1979) ...............................................................22

*Williamson v. Lee Optical of Okla., Inc.*,
    348 U.S. 483 (1955) ...............................................................13

## STATUTES

Cal. Civ. Code §1947.12(d) (as amended by AB1482, the California, Tenant
    Protection Act, 2019) ...........................................................22

Cal. Civ. Code § 1954.50...........................................................22

 A.B. 5 ................................................................................. passim

## RULES

Fed. R. App. P. 29(a)(5)...........................................................25

Fed. R. App. P. 32(f)...............................................................25

## MUNICIPAL CODES

L.A., CAL., MUNICIPAL CODE ch. II, art. I (1981)...................................20

L.A., CAL., MUNICIPAL CODE ch. II, art. I, §§ 21.29, 21.30 (2005) ......................20

L.A., CAL., MUNICIPAL CODE ch. IV, art. 5.3, § 45.30 (2021) ...............................15

L.A., CAL., MUNICIPAL CODE ch. XV §151.02 (2017) ...........................................22

OAKLAND, CAL., MUNICIPAL CODE tit. 4, ch. 5.04 (as amended by Resolution No. 89297, 2023) ....................................................................................................20

OAKLAND, CAL., MUNICIPAL CODE tit. 4, ch. 5.04, § 5.04.262 ..............................21

OAKLAND, CAL., MUNICIPAL CODE tit. 4, ch. 5.04, § 5.04.6263 (as amended by Resolution No. 89297, 2023) ....................................................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.08. ................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.10. ................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.12. ................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.14. ................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.26. ................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.36. ................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.36 § 5.36.010 (2005) ...................18

OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.60. ................................................21

OAKLAND, CAL., MUNICIPAL CODE tit. 8, ch. 8.22, art. V, § 8.22.610, et. seq. (2020) ......................................................................................................................15

OAKLAND, CAL., MUNICIPAL CODE tit. 8, ch. 8.22, § 8.22.030 (2021)...................22

OAKLAND, CAL., MUNICIPAL CODE tit. 9, ch. 9.24 (2014). ....................................16

SACRAMENTO, CAL., CITY CODE § 5.156.030 (2019) .............................................22

S.F., CAL., POLICE CODE, art. 33F (2015)...............................................................15

S.F., CAL., POLICE CODE, art. 33G (2015)...............................................................15

S.F., CAL., POLICE CODE, art. 33N (2022)...............................................................15

S.F., CAL., ADMINISTRATIVE CODE ch. 37, § 37.2(r) (2022)....................................22

S.F., CAL., ADMINISTRATIVE CODE ch. 37, § 37.3(g) (2022)...................................22

## OTHER AUTHORITIES

City Council Agenda Report for AB 1439: Prohibit Sweepstakes Gambling
Operations, available at:
https://oakland.legistar.com/LegislationDetail.aspx?ID=1614780&GUID=5650008
1-0543-47DA-BECE-
DA74BE488C23&Options=ID|Text|&Search=sweepstakes.................................16

S. Comm. On Lab., Public Emp. And Ret., Analysis 5-8 (July 8, 2019) ………...10

Zamorra, Jim Herron, *Oakland City Moves to Limit Massage Parlors*, SF GATE,
(Feb. 3, 2005), https://www.sfgate.com/bayarea/article/OAKLAND-City-moves-
to-limit-massage-parlors-2701574.php..................................................................18

## INTEREST OF THE AMICI CURIAE[1]

*Amici* are local governments and the elected attorneys who represent communities across the Ninth Circuit. *Amici* provide a variety of critical services to their communities, including promoting safe and flourishing economies and economic development. *Amici* also provide essential infrastructure and services to their residents and local businesses, including by regulating the local economy to ensure that workers are protected in their work environments. Worker protections benefit local governments and the communities they serve by putting the onus on employers to provide a safe working environment and to participate in providing a safety net for employees in case of injury, illness, or disability.

A key component of the work local governments do on behalf of their constituents is passing legislation. City Councils and County Boards of Supervisors learn about issues affecting their constituents that need to be addressed and pass laws in response. Without these ordinances, local governments have more limited authority to set higher standards or enforce existing state or federal protections. Accordingly, local governments have a significant interest in protecting their ability to respond to community needs by passing legislation that regulates their

---

[1] This brief is filed with the consent of all parties. No party's counsel authored the brief in whole or in part or contributed money intended to fund preparing or submitting the brief. No person, other than amici curiae, their members, or their counsel, contributed money intended to fund preparing or submitting the brief.

local economies, and being able to enforce those ordinances, without the risk that any person or group who is negatively impacted could call on the courts to strike down the law.

## INTRODUCTION

On March 17, 2023, a panel of this Court issued its decision (Decision) in this matter, reversing the district court's dismissal of Plaintiffs' equal protection challenge to California's Assembly Bill 5 (A.B. 5). The panel's decision contravenes established Ninth Circuit precedent and puts at risk much of the legislation that is at the core of local governments' function. *Amici* urge the Court to take this case en banc and to affirm the district court's dismissal of Plaintiffs' equal protection claim.

A.B. 5 establishes a clear regulatory regime to determine when a particular worker should be considered an employee, and thus receive all of the benefits and protections the law affords employees. Those benefits and protections are distinct from what is afforded to an independent contractor. The California state legislature passed A.B. 5 in response to evidence of widespread worker misclassification in the "gig worker" industry. A.B. 5, however, is a generally applicable law in that it applies "to hundreds of different industries[.]" *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 657 (9th Cir. 2021) (citation omitted). The statute also contains a number of exemptions to ensure that the generalized regime set out in A.B. 5 does not inadvertently disrupt industries where misclassification is not an issue and workers are properly classified as independent contractors. *See* S. Comm. On Lab., Public

Emp., and Ret., Analysis 5-8 (July 8, 2019)[2]. A.B. 5 is representative of countless statutes and ordinances at the state and local level that seek to address safety, provide benefits, and protect rights in the local economy.

The panel decision contradicts established circuit precedent holding that "[w]here a regulation or statute affects only economic and not fundamental interests, the state is free to create any classification scheme that does not invidiously discriminate." *Jackson Water Works, Inc. v. Pub. Utils. Comm'n*, 793 F.2d 1090, 1093 (9th Cir. 1986). A law must be upheld as long as there are "'plausible,' 'arguable,' or 'conceivable' reasons which may have been the basis for the distinction." *Id.* at 1094 (quoting *Brandwein v. Cal. Bd. of Osteopathic Exam'rs*, 708 F.2d 1466, 1472 (9th Cir. 1983)). In fact, this circuit has already determined that the very law at issue here, A.B. 5, has plausible, arguable, or conceivable justifications sufficient to overcome an equal protection challenge. *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 965 (9th Cir. 2021), cert. denied, 213 L. Ed. 2d 1091, 142 S. Ct. 2870 (2022).

The panel decision puts one of the core functions of local governments – to regulate the local economy – at risk. If the decision stands, numerous statutes and ordinances such as permitting requirements, business taxes, and zoning codes

---

[2] Bill analyses for A.B. 5 are available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200AB5.

could be subject to equal protection challenges simply because the legislation addresses problems in a particular industry and does not treat all participants in the broader economy the same.

## ARGUMENT

### I.     The Panel Decision Misapplied Clear Ninth Circuit Precedent.

The Court should rehear this case en banc because the panel decision misapplied Ninth Circuit precedent. In *American Society of Journalists*, the Ninth Circuit has already rejected an equal protection challenge to certain A.B. 5 exemptions. 15 F.4th at 964-966. The Court determined that in passing A.B. 5, the California legislature carried out its traditional legislative function by "weigh[ing] several factors" in determining how to regulate different occupations. *Id*. at 966. This Court held that the State "permissibly subject[ed] workers in different fields to different rules." *Id.* The law reflects misclassification issues particularly found "in certain industries." *Id.* at 965.

A.B. 5 does not single out the gig worker industry "with no rational or logical reason for doing so." *S.F. Taxi Coalition v. City & Cty. of S.F.*, 979 F.3d 1220, 1224-1226 (9th Cir. 2020) (quoting and distinguishing *Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008), to uphold a regulation that sought to mitigate the effect on certain taxi drivers affected by a shift in the market). Rather, as this Court has acknowledged, in passing A.B. 5, the state legislature "weighed several

12

factors: the workers' historical treatment as employees or independent contractors, the centrality of their task to the hirer's business, their market strength and ability to set their own rates, and the relationship between them and their clients." *Am. Soc'y of Journalists & Authors, Inc.*, 15 F.4th at 965. "So long as the law rests upon some rational basis—as it does here—[the Court's] inquiry is at an end." *Id.*

This Court's holding in *American Society of Journalists* is consistent with clear Ninth Circuit precedent allowing governments to address targeted economic issues through laws that only impact certain groups. *See, e.g.*, *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015) (upholding a law imposing a lien activation fee on plaintiffs but exempting other entities because it rationally related to the goal of clearing a lien backlog); *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 486-491 (1955) (upholding a law requiring a prescription from an optometrist or ophthalmologist for an optician to fit or duplicate lenses). There is also precedent that allows legislatures to craft legislation according to particular public needs, including by exempting certain industries or groups of people. *See, e.g.*, *Gallinger v. Becerra*, 898 F.3d 1012, 1018 (9th Cir. 2018) (upholding a statute prohibiting firearms on school grounds that exempted concealed carry permit holders and retired peace officers). And the Supreme Court has already made clear that in areas of social and economic policy "a statutory classification . . . must be upheld against equal protection challenge if there is any

reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). For that reason, this Court has often affirmed district court decisions dismissing rational basis challenges on the pleadings. *See, e.g.*, *S.F. Taxi Coalition*, 979 F.3d at 1224-1226; *Gallinger*, 898 F.3d at 1018-1019; *Angelotti Chiropractic*, 791 F.3d at 1087-1088; *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1140 (9th Cir. 2009); *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279-1283 (9th Cir. 2004); *Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 935-938 (9th Cir. 2000); *Shamrock Farms Co. v. Veneman*, 146 F.3d 1177, 1183 (9th Cir. 1998); *Brandwein v. Cal. Bd. of Osteopathic Exam'rs*, 708 F.2d at 1470-1475.

The panel decision here flies in the face of this precedent by holding that Plaintiffs plausibly allege that A.B. 5 violates the equal protection clause on the ground that it exempts certain categories of workers. The Court should rehear this case to preserve established circuit precedent granting deference to state and local governments to craft economic legislation.

## II. The Panel's Decision Puts Critical State and Local Legislation at Risk.

### A. Legislation Regulating the Local Economy is Critical to the Functioning of Local Governments.

One of the core functions of state and local governments is the regulation of businesses, industries, and working conditions. From health codes, to zoning

codes, to permitting requirements, local governments routinely single out particular problems affecting their communities and legislate to address those problems.

Local governments often regulate working conditions and benefits for workers, just as A.B. 5 does, in order to protect their constituents' rights. Examples of legislation that impacts one group beneficially or detrimentally more than another are wide-ranging. For example, to address industry-specific practices resulting in involuntary part-time employment status, the City and County of San Francisco has enacted legislation imposing scheduling and retention protections for employees of businesses that have at least 40 retail sales establishments located worldwide. S.F., CAL., POLICE CODE, art. 33F and 33G (2015). Similarly, in light of industry-specific problems exacerbated by the COVID-19 pandemic, San Francisco adopted an ordinance designed to ensure that domestic workers are able to obtain paid sick leave. S.F., CAL., POLICE CODE, art. 33N (2022). As another example, the City of Los Angeles has a Tenant Anti-Harassment Ordinance motivated by "unscrupulous landlords [that] have been constructively evicting long-term tenants[.]" L.A., CAL., MUNICIPAL CODE ch. IV, art. 5.3, § 45.30 (2021). Similarly, Oakland's Tenant Protection Ordinance was passed to deter harassing behavior by landlords, to encourage landlords to follow the law, and to give tenants legal recourse where they are subjected to harassing behavior by landlords. OAKLAND, CAL., MUNICIPAL CODE tit. 8, ch. 8.22, art. V, § 8.22.610, et. seq.

(2020). Each of these ordinances identify a particular industry that requires additional regulation or a type of worker that needs protection.

Legislation regulating the economy is also often inspired by bad acts in a particular industry or by a particular actor. For example, in 2014, Oakland's City Council passed amendments to its gambling ordinance to "close a loophole revealed by an 'internet sweepstakes café' operating in Oakland's Fruitvale District[.]"[3] At this café, and at numerous others in the Bay Area, customers could buy internet time, and in exchange they were rewarded with a chance to win cash in a sweepstakes contest – essentially paying for internet time *and* a lottery ticket. The ordinance addresses this loophole in gambling regulations by prohibiting internet sweepstakes cafes. OAKLAND, CAL., MUNICIPAL CODE tit. 9, ch. 9.24 (2014). This ordinance, and many others like it, are motivated by the actions of a particular actor. "[G]overnmental regulations today typically benefit some groups and burden others. So long as there are other legitimate reasons for the economic distinction, [the Court] must uphold the state action." *S.F. Taxi Coal.*, 979 F.3d at 1225. The panel's decision, however, would put any generally applicable and rationally-based ordinance or statute that happens to be motivated by a particular

---

[3] City Council Agenda Report for AB 1439: Prohibit Sweepstakes Gambling Operations, available at:
https://oakland.legistar.com/LegislationDetail.aspx?ID=1614780&GUID=5650008 1-0543-47DA-BECE-DA74BE488C23&Options=ID|Text|&Search=sweepstakes.

actor or industry at risk of being challenged by a party whose conduct is now

regulated.

### B. Legislation Spurred by a Particular Industry or Actor Does Not Evidence Animus.

The panel decision focuses on statements of Assemblywoman Gonzalez as

the basis for distinguishing this case from *American Society of Journalists &*

*Authors, Inc*. Decision at 26. It cites *Merrifield v. Lockyer*, 547 F.3d at 991, to

support its conclusion that the state legislature exhibited animus towards Plaintiffs.

Decision at 26. In *Merrifield*, the court was instructed by a Sixth Circuit equal

protection analysis that "the singling out of a particular economic group, with no

rational or logical reason for doing so, was strong evidence of an economic animus

with no relation to public health, morals, or safety." 547 F.3d at 989. Economic

animus is defined as "a bare . . . desire to harm a politically unpopular group[.]"

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018) (citing

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985)).

Legislation is *"presumed to be valid* and will be sustained under the Equal

Protection Clause if the classification drawn by the statute is rationally related to a

legitimate state interest." *Id.* (emphasis added, citation omitted). A.B. 5 must be

upheld unless Plaintiffs show *both* that "the statute serves no legitimate

governmental purpose *and* . . . impermissible animus toward an unpopular group

prompted the statute's enactment." *Id.* (emphasis in original) (quoting *Mountain*

*Water Co. v. Mont. Dep't of Pub. Serv. Regulation*, 919 F.2d 593, 598 (9th Cir. 1990)). Plaintiffs did not plausibly satisfy either requirement here.

The panel's interpretation of Assemblywoman Gonzalez's motivation for introducing A.B. 5 as "animus" misunderstands and distorts the usual functioning of legislative bodies. Legislators are commonly motivated to pass ordinances and statutes in response to the particular actions of an actor or industry. For example, the City of Oakland passed extensive legislation regulating massage parlors to address the industry's association with sex trafficking and illegal sex work. OAKLAND, CAL., MUNICIPAL CODE tit. 5, ch. 5.36 (2005). The stated purpose of the ordinance is "to ensure that persons employed as massage therapists meet minimum training standards and are protected from being exploited to perform nonmassage services." *Id.* at § 5.36.010. The City Council President at the time, Ignacio De La Fuente, explained, "[w]e need to stop the spread of seedy massage parlors because they threaten neighborhoods by exploiting women, endangering children and sabotaging the economic investments we are making to move Oakland forward."[4] The Council President's statements expressed disapproval of and concern about the human impacts of the activities and industry the City Council was regulating, but they did not exhibit unconstitutional animus. There

---

[4] Zamorra, Jim Herron, *Oakland City Moves to Limit Massage Parlors*, SF GATE, (Feb. 3, 2005), https://www.sfgate.com/bayarea/article/OAKLAND-City-moves-to-limit-massage-parlors-2701574.php.

was a rational basis for the ordinance—to ensure that massage parlors were not used for illegal trafficking and prostitution. That is all that is needed for legislation to be upheld.

Additionally, the panel decision is flawed because it uses a single legislator's statements about ride-share and delivery companies to infect legislation passed by an entire legislative body. This Court has "been reluctant to attribute [one legislator's] motives to the legislative body as a whole" because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Tingley v. Ferguson*, 47 F.4th 1055, 1087 (9th Cir. 2022) (citations omitted). Assemblywoman Gonzalez's individual statements directed towards app-based ride-hailing and delivery companies cannot be sufficient to overcome the plainly stated rational basis of A.B. 5—to protect misclassified workers.

## C. Local Governments Commonly Enact Legislation that Applies to Only Specific Businesses or Contains Significant Exemptions.

Local governments commonly pass laws regulating the economy that apply to specific sectors or that include significant exemptions. Under the rational basis test as established by this circuit's prior precedent, policy choices about the scope and application of economic regulations rest in the sound discretion of the legislature. As this Court held in *American Society of Journalists*, under the rational basis test, local governments are "given [] wide latitude … in managing

their economies." 15 F.4th at 965. This latitude includes enacting economic

regulations that apply only to certain groups or industries and exempt others.

"'Where a regulation or statute affects only economic ... interests,' … 'the state is

free to create any classification scheme that does not invidiously discriminate.'"

*S.F. Taxi Coal.*, 979 F.3d at 1224 (quoting *Jackson Water Works, Inc. v. Pub.

Utils. Comm'n*, 793 F.2d at 1093). Under the rational basis test, courts "defer[] to

legislative determinations as to the desirability of particular statutory

discriminations." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). The

panel's opinion in this case threatens to upend this established framework, making

a slew of long-standing and widespread local economic regulations vulnerable to

constitutional challenge.

Governments, including states, cities, and counties, often enact economic

legislation that serves a public purpose but also contains exemptions or limits the

application to specific industries. For example, Los Angeles and Oakland have

imposed business taxes on most businesses operating in those cities, with specified

exceptions. *See, e.g.*, L.A., CAL., MUNICIPAL CODE ch. II, art. I (1981); OAKLAND,

CAL., MUNICIPAL CODE tit. 4, ch. 5.04 (as amended by Resolution No. 89297,

2023). The Los Angeles business tax law exempts small businesses and creative

artists from the business tax, and also exempts new businesses from portions of the

tax in their first years of operation. L.A., CAL., MUNICIPAL CODE ch. II, art. I, §

21.29, 21.30 (2005). Similarly, Oakland's business tax laws exempt affordable housing developments and family daycares. OAKLAND, CAL., MUNICIPAL CODE tit. 4, ch. 5.04, §§ 5.04.262 (affordable housing exemption), 5.04.6263 (family daycare exemption) (as amended by Resolution No. 89297, 2023). These exemptions reflect the rational and legitimate policy choices of the Los Angeles and Oakland City Councils.

As an additional example, the City of Oakland has adopted laws that require various types of businesses to apply for and receive a business permit as a condition of operating in the City, but not every type of business that operates in Oakland must do so.[5] OAKLAND, CAL., MUNICIPAL CODE tit. 5. For example, businesses including auctioneers, bingo parlors, cabarets, carnivals, firearms dealers, massage parlors, and skating rinks all must obtain business permits to operate in Oakland. *Id.* chs. 5.08, 5.10, 5.12, 5.14, 5.26, 5.36, 5.60. In contrast, Oakland does not require business permits for restaurants or clothing stores, among many other types of businesses. The City of Oakland's decision to require permits of only certain business is a legislative one, and "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of [these] legislative policy

---

[5] These business permits are distinct from other types of permits that are commonly required, such as Building and Zoning permits, conditional use permits, and health-related permits.

determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *See Dukes*, 427 U.S. at 303.

Exemptions from economic regulation also are common in the area of landlord/tenant law. Local governments in California consistently exempt certain categories of housing from laws governing rent increases and evictions, both as a policy choice and because doing so is necessary to comply with state law (e.g., the Costa Hawkins Rental Housing Act, Cal. Civ. Code § 1954.50 *et seq.*). For example, rent stabilization ordinances in San Francisco, Oakland, Sacramento, and Los Angeles exempt new construction and single-family homes and condos, among other categories of housing. *See* S.F., CAL., ADMINISTRATIVE CODE ch. 37, §§ 37.2(r), 37.3(g) (2022); OAKLAND, CAL., MUNICIPAL CODE tit. 8, ch. 8.22, § 8.22.030 (2021); SACRAMENTO, CAL., CITY CODE § 5.156.030 (2019); L.A., CAL., MUNICIPAL CODE ch. XV §151.02 (2017). Parallel exemptions appear in state housing laws. *See e.g.*, Cal. Civ. Code 1947.12(d) (as amended by AB1482, the California, Tenant Protection Act, 2019). Under both Supreme Court and Ninth Circuit precedent, local laws like these may be "'to some extent both underinclusive and overinclusive'" without violating the Equal Protection clause. *See Gallinger*, 898 F.3d at 1018 (quoting *Vance v. Bradley*, 440 U.S. 93, 108 (1979)). The foregoing illustrations represent just a few examples of the many types of local laws that the panel opinion threatens to call into question.

In departing from established equal protection jurisprudence, the panel's opinion in this case calls into question the validity of the types of local economic regulations described here that contain classification schemes, which courts have historically upheld. *See e.g.*, *S.F. Taxi Coal.*, 979 F.3d at 1224-1225 (rejecting equal protection challenge to municipal transit agency rule favoring recent owners of taxi medallions over taxi drivers who have held medallions longer); *Angelotti Chiropractic, Inc.*, 791 F.3d at 1087 (holding that California law requiring certain medical providers to pay a lien activation fee before pursuing claims for medical fees does not violate Equal Protection Clause); *International Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 407 (9th Cir. 2015) (rejecting equal protection challenge to Seattle ordinance classifying franchisees as large employers and subjecting them to more stringent minimum wage laws than small employers).

## **CONCLUSION**

The panel's decision departs from governing circuit precedent and has potentially wide-reaching implications for local government's ability to effectively legislate to regulate their economies. For these reasons, the panel decision should be reheard en banc.

/ / /

/ / /

/ / /

Dated:  May 8, 2023

      BARBARA J. PARKER, City Attorney
      MARIA Bee, Chief Deputy City Attorney
      ZOE SAVITSKY, Supervising Deputy City Attorney
      DIVYA MUSINIPALLY, Deputy City Attorney
      ZARAH RAHMAN, Housing Justice Initiative Attorney

      By: /s/ Divya Musinipally
      Attorneys for Oakland City Attorney's Office


      HYDEE FELDSTEIN SOTO, City Attorney
      MICHAEL J. BOSTROM, Senior Assistant City Attorney

      By: /s/ Michael J. Bostrom
      Attorneys for the City of Los Angeles


      DAVID CHIU, City Attorney
      YVONNE R. MERÉ, Chief Deputy City Attorney
      MATTHEW D. GOLDBERG, Chief Worker Protection Attorney
      IAN H. ELIASOPH, Deputy City Attorney

      By: /s/ Matthew D. Goldberg
      Attorneys for the City and County of San Francisco


      LEESA MANION, Prosecuting Attorney

      By: /s/ Leesa Manion
      Leesa Manion (she/her)
      King County Prosecuting Attorney's Office
      Attorney for King County, Washington

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs
*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

9th Cir. Case Number(s) 20-55267, 21-55757

I am the attorney or self-represented party.

**This brief contains 3439 words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with

Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R.
28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
    29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R.
32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b)
    because *(select only one)*:
        [  ] it is a joint brief submitted by separately represented parties;
        [  ] a party or parties are filing a single brief in response to multiple
        briefs; or
        [  ] a party or parties are filing a single brief in response to a longer
        joint brief. [  ] complies with the length limit designated by court order dated

. [  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature /s/** <u>Divya Musinipally</u>          **Date** May 8, 2023
_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel of Record hereby certifies that pursuant to Rule 8.204(c)(1) of the California Rules of Court, the foregoing Amicus Curiae Brief was produced using 13 point or greater roman type font and contains 3439 words, which is less than the total words permitted by the California Rules of Court. Counsel relies on the word count of the computer software program used to prepare this brief.

Dated: May 8, 2023

        BARBARA J. PARKER, City Attorney
        ZOE SAVITSKY, Supervising Deputy City Attorney
        DIVYA MUSINIPALLY, Deputy City Attorney
        ZARAH RAHMAN, Housing Justice Attorney

        By: /s/ DIVYA MUSINIPALLY
        Attorneys for Oakland City Attorney

## **CERTIFICATE OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is City Hall, One Frank H. Ogawa Plaza, 6th Floor, Oakland, California 94612. On the date shown below, I served the within documents:

AMICUS CURIAE BRIEF OF LOCAL GOVERNMENTS
IN SUPPORT OF APPELLEES' PETITION FOR PANEL
REHEARING OR REHEARING EN BANC

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on May 8, 2023 at Oakland, California.

/s/ Nanette Johnson