No. 21-55757

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

LYDIA OLSON, ET AL.,
*Plaintiffs-Appellants,*

v.

STATE OF CALIFORNIA, ET AL.,
*Defendants-Appellees.*

———————————

**On Appeal from the United States District Court
for the Central District of California**
No. 2:19-CV-10956-DMG-RAO
Hon. Dolly M. Gee, Judge

———————————

**BRIEF OF *AMICI CURIAE* CENTER FOR LAW AND WORK AND
LABOR AND CONSTITUTIONAL LAW SCHOLARS
IN SUPPORT OF DEFENDANTS-APPELLEES'
PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

———————————

CHRISTINA N. CHUNG
Center for Law and Work
University of California, Berkeley
School of Law
306 Law Building
Berkeley, CA 94720
(510) 872-2203
christinachung@berkeley.edu

*Attorney for Amici Curiae*

# TABLE OF CONTENTS

**Page**

Statement of Interest..................................................................................1

Introduction ..............................................................................................1

Discussion.................................................................................................4

I.    THE PANEL'S CONCLUSION THAT AB 5 HAS
NO LEGITIMATE PURPOSE DISREGARDS THE
RATIONAL BASIS STANDARD ..........................................................4

    A.    In Rejecting AB 5's Legitimate Purpose, the Panel Ignored
This Court's Previous Interpretation of the Statute ........................5

    B.    The Panel's View That "Animus" is Dispositive Defies the
U.S. Supreme Court's and This Court's Precedent ........................6

II.    THE PANEL'S RULING THAT THE EXEMPTIONS UNDER
AB 5 ARE NOT RATIONALLY RELATED TO ITS PURPOSE
CONTRAVENES EQUAL PROTECTION JURISPRUDENCE
AND MISCONSTRUES AB 5 ...............................................................9

    A.    The Panel Disregarded This Court's Previous Ruling
That AB 5 Has a Rational Basis, As Well As Longstanding
Constitutional Principles Requiring Judicial Deference to
Legislative Line-Drawing ...........................................................10

    B.    The Panel's Repudiation of AB 5's Rational Basis
Misapprehends How the Statute's Exemptions Function.............15

Conclusion...............................................................................................19

Appendix: List of *Amici* Labor and Constitutional Law Scholars .........20

i

# TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*
  15 F.4th 954 (9th Cir. 2021) ....................................................... *passim*

*Animal Legal Def. Fund v. Wasden*
  878 F.3d 1184 (9th Cir. 2018)..........................................................7, 8

*Bd. of Trustees of Univ. of Alabama v. Garrett*
  531 U.S. 356 (2001).........................................................................7

*Boardman v. Inslee*
  978 F.3d 1092 (9th Cir. 2020)........................................................2, 7

*Cal. Trucking Ass'n. v. Bonta*
  996 F.3d 644 (9th Cir. 2021)...............................................................11

*City of Cleburne v. Cleburne Living Ctr., Inc.*
  473 U.S. 432 (1985)..................................................................7, 8, 9

*Dynamex Operations W. v. Superior Ct.*
  4 Cal.5th 903 (2018) ....................................................3, 6, 15, 16, 17

*FCC v. Beach Commc'ns, Inc.*
  508 U.S. 307 (1993)...................................................................... *passim*

*Gallinger v. Becerra*
  898 F.3d 1012 (9th Cir. 2018)...........................................................12

*Heller v. Doe*
  509 U.S. 312 (1993)......................................................................4, 13

*Lawrence v. Texas*
  539 U.S. 558 (2003).........................................................................8

*Lawson v. Grubhub, Inc.*
  302 F.Supp.3d 1071 (N.D. Cal. 2018) ...............................................14

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Mountain Water Co. v. Mont. Dep't of Pub. Serv. Regul.*
  919 F.2d 593 (9th Cir. 1990)...............................................................5, 7

*Olson v. Bonta*
  No. CV 19-10956-DMG (RAOx), 2021 WL 3474015
  (C.D. Cal. July 16, 2021) ...............................................................13, 14

*Olson v. California*
  62 F.4th 1206 (9th Cir. 2023) ...................................................... *passim*

*Powers v. Harris*
  379 F.3d 1208 (10th Cir. 2004).........................................................8, 9

*Romer v. Evans*
  517 U.S. 620 (1996) ...................................................................2, 8, 9

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*
  48 Cal.3d 341 (1989) ...............................................................10, 15, 16

*S.F. Taxi Coal. v. City & Cnty. of S.F.*
  979 F.3d 1220 (9th Cir. 2020).........................................................2, 12

*Starlight Sugar, Inc. v. Soto*
  253 F.3d 137 (1st Cir. 2001) ................................................................5

*Trump v. Hawaii*
  138 S.Ct. 2392 (2018) ......................................................................2, 9

*United States Dep't of Agric. v. Moreno*
  413 U.S. 528 (1973)...................................................................6, 7, 8, 9

*Williamson v. Lee Optical of Okla., Inc.*
  348 U.S. 483 (1955).......................................................................11, 12

## TABLE OF AUTHORITIES
### (continued)

**Page**

**Statutes**

AB 5, Ch. 296, 2019–2020 Reg. Sess. (Cal. 2019) ................................................5, 6

Cal. Lab. Code § 2775 ...............................................................................11, 15

Cal. Lab. Code § 2777 .............................................................................16

**Other Authorities**

Assemb. Comm. on Lab. & Emp., AB 5, 2019–2020 Reg. Sess.
(Cal. July 5, 2019) ...............................................................................11

S. Comm. on Lab., Public Emp., and Ret., AB 5, 2019–2020 Reg. Sess.
(Cal. July 8, 2019) ...............................................................................12

## STATEMENT OF INTEREST

*Amicus* the Center for Law and Work, at UC Berkeley School of Law, fosters cross-disciplinary scholarship, student engagement, and community involvement to address pressing and emerging labor issues faced by workers, with an emphasis on protecting the rights of workers in low-wage industries. One focus of the Center is to analyze seminal California labor laws like the misclassification statute at issue in this case, Assembly Bill (AB) 5. The Center therefore has a significant interest in addressing the important questions raised herein.

*Amici* are also scholars of labor and constitutional law, who share a considerable interest in this case to ensure the optimal and accurate development of such laws in order to serve the public interest. A list of *Amici* and their institutional affiliations (for identification purposes only) appears at the end.

No party or party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than *Amici Curiae*, their members, or their counsel contributed money that was intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

## INTRODUCTION

"The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most

1

legislation classifies for one purpose or another...." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citations omitted). In "the ordinary case"—one that does not involve a suspect class or infringe on a fundamental constitutional right—a statutory classification must be upheld if it is rationally related to a legitimate government interest, even if the law "works to the disadvantage of a particular group." *Id.* at 632 (citations omitted).

This case is just such an ordinary case, bearing no resemblance at all to the exceedingly rare situation in which the U.S. Supreme Court or this Court has struck down legislation under rational basis review.[1] But this is a case, nonetheless, in which the panel acted extraordinarily by holding that the district court erred in dismissing Plaintiffs' equal protection claim. *See Olson v. California*, 62 F.4th 1206 (9th Cir. 2023). In so doing, the panel disregarded decades of equal protection jurisprudence and engaged in the same sort of "*Lochner*"-esque "free-wheeling policy judgment" that this Court has warned against. *See S.F. Taxi Coal. v. City & Cnty. of S.F.*, 979 F.3d 1220, 1225–26 (9th Cir. 2020).

---

[1]   Indeed, the Supreme Court has noted, "Given the standard of review, it should come as no surprise that the Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, 138 S.Ct. 2392, 2420 (2018) (referring to rational basis review in equal protection cases). *See also Boardman v. Inslee*, 978 F.3d 1092, 1118 (9th Cir. 2020) (citing *Trump v. Hawaii* for the same observation).

*Amici Curiae* submit this brief in support of Defendants' petition for panel rehearing or *en banc* review, for three reasons. First, the panel's opinion, far from a "paradigm of judicial restraint" that is required under the rational basis standard, *see FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993), represents a form of judicial activism that puts this case at odds with U.S. Supreme Court and Ninth Circuit precedent—including this Court's prior decision in *American Society of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 964 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 2870 (2022), in which the Court found that AB 5, the very same statute at issue in this case, survived rational basis scrutiny. Second, the panel's decision opens the door to an increase in constitutional challenges by businesses subject to economic regulation, based on the startling proposition that they may constitute a "politically unpopular group" deserving of "more searching" rational basis scrutiny. Third, appropriate resolution of this constitutional issue is of exceptional importance because the underlying economic regulation at issue, AB 5, involves a critical state statute aimed at addressing misclassification of employees as independent contractors, an issue that has "considerable significance for workers, businesses, and the public generally." *See Dynamex Operations W. v. Superior Ct.*, 4 Cal.5th 903, 912 (2018).

## DISCUSSION

Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Commc'ns*, 508 U.S. at 313. Judicial restraint is necessary to "preserve to the legislative branch its rightful independence and its ability to function." *Id.* at 315 (citations and internal quotations omitted). This is especially so with economic legislation, "given the wide latitude afforded to states in managing their economies." *Am. Soc'y of Journalists*, 15 F.4th at 965 (citation omitted).

Despite its obligation to accord AB 5 "a strong presumption of validity," *see Heller v. Doe,* 509 U.S. 312, 319 (1993) (citations omitted), the panel in this case focused on the alleged "animus" of legislators as indicating that either: (1) AB 5 has no legitimate governmental purpose; or (2) there is no rational relationship between any legitimate governmental purpose and AB 5's exemptions. *See* 62 F.4th at 1219-20. Both conclusions are mistaken. The panel's opinion radically diverges from well-established equal protection jurisprudence, conflicts with this Court's previous interpretation of AB 5, and misapprehends AB 5's exemptions.

## I. THE PANEL'S CONCLUSION THAT AB 5 HAS NO LEGITIMATE PURPOSE DISREGARDS THE RATIONAL BASIS STANDARD

Contrary to precedent of the U.S. Supreme Court and this Court, the panel's ruling that AB 5 has no legitimate purpose (because the "primary impetus" was

4

"animus," *see* 62 F.4th at 1219-20) improperly renders alleged "animus" dispositive while it erroneously assumes Plaintiffs may claim constitutional protection as a "politically unpopular group."

### A. In Rejecting AB 5's Legitimate Purpose, the Panel Ignored This Court's Previous Interpretation of the Statute

This Court, in previously holding that AB 5 "rests upon [a] rational basis," recognized the state's legitimate interest in confronting misclassification of employees as independent contractors. *See Am. Soc'y of Journalists*, 15 F.4th at 965-66. While ostensibly giving a nod to one of AB 5's publicly stated purposes, 62 F.4th at 1219 (citing AB 5, Ch. 296, 2019–2020 Reg. Sess. § 1(e) (Cal. 2019)), the panel's opinion nevertheless calls this purpose into question. 62 F.4th at 1219-20. The panel seems to have inappropriately relied on its view that during oral argument, defense counsel "was unable to articulate a conceivable rationale" that explains AB 5's exemptions. *Id.* at 1219, n. 11. But appellate courts "need not rely only upon those purposes the legislature, litigants, or district court have espoused." *Mountain Water Co. v. Mont. Dep't of Pub. Serv. Regul.*, 919 F.2d 593, 597 (9th Cir. 1990); *see also Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 146 (1st Cir. 2001) (courts are not bound by the parties' arguments and must seek out other conceivable reasons for validating a statute). And although courts "never require a

legislature to articulate its reasons for enacting a statute," *Beach Commc'ns*, 508 U.S. at 315, here, in fact, the legislature expressed clear rationales for AB 5.

In addition to declaring a legislative purpose of ensuring that misclassified workers "have the basic rights and protections they deserve under the law," AB 5 also notes various harms caused by misclassification. This includes not only the harm experienced by workers but also "the unfairness to employers who must compete with companies that misclassify, and the loss to the state of needed revenue from companies that use misclassification…." AB 5, Ch. 296, 2019–2020 Reg. Sess. § 1(b), (e) (Cal. 2019). Addressing these harms and ensuring workers are not misclassified—while also preserving true independent contractor relationships—are indisputably legitimate state interests. *See Beach Commc'ns*, 508 U.S. at 313 ("any reasonably conceivable state of facts" may provide a rational basis for the classification); *see also Dynamex*, 4 Cal.5th at 912 (misclassification is an issue that has "considerable significance for workers, businesses, and the public generally").

## B. The Panel's View That "Animus" is Dispositive Defies the U.S. Supreme Court's and This Court's Precedent

The panel obliquely invokes, through a parenthetical, the proposition that a legislative "desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." 62 F.4th at 1220 (quoting *United States Dep't of*

*Agric. v. Moreno*, 413 U.S. 528, 534, 538 (1973)). Putting aside whether Plaintiffs have even adequately pled impermissible animus, even such a showing cannot amount to an equal protection violation under rational basis scrutiny, once a legitimate governmental purpose is apparent.

The mere presence in state decisionmaking of "negative attitudes" or "biases," standing alone, "does not a constitutional violation make." *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 448 (1985)). Because Plaintiffs are not members of a suspect class, an equal protection violation on the basis of animus may be found "only 'if the statute serves no legitimate governmental purpose *and* if impermissible animus toward an unpopular group prompted the statute's enactment.'" *Boardman v. Inslee*, 978 F.3d 1092, 1119 (9th Cir. 2020) (citing *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018) (quoting *Mountain Water*, 919 F.2d at 598)) (emphasis in original). As noted above, AB 5 serves a legitimate state interest.[2] This renders any alleged animus irrelevant for equal protection purposes and is fatal to Plaintiffs' equal protection claim. *See Boardman*, 978 F.3d at 1119; *Animal Legal Def. Fund*, 878 F.3d at 1200 (no equal protection violation where statute had legitimate

---

[2]    *See also* discussion in Part II, *infra,* regarding the rational relationship between AB 5's exemptions and its legitimate purpose.

governmental purpose and thus "did not rest exclusively" on irrational prejudice, even though animus was a motivating factor) (internal quotations and citation omitted).

The panel's indication otherwise—because putatively, Plaintiffs are a "politically unpopular group"—ignores that this concept should not even apply to the economic legislation at issue here. Based on a very narrow line of U.S. Supreme Court cases, this Court has stated that a "more searching" application of the rational basis test may be utilized when a law exhibits a desire to harm an "unpopular group." *See Animal Legal Def. Fund*, 878 F.3d at 1200 (quoting *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring in judgment)). In *Lawrence*, Justice O'Connor explained that the Supreme Court has been "most likely to apply rational basis review" to invalidate a statute when the challenged legislation exhibiting a desire to harm a politically unpopular group "inhibits *personal relationships*."[3] 539 U.S. at 580 (emphasis added). Neither the Supreme Court nor this Court has ever held that a *business* regulated through economic legislation can constitute a "politically unpopular group" deserving of "more searching" rational basis review. *See Powers v. Harris*, 379 F.3d 1208,

---

[3] For example, "politically unpopular groups" have included "hippie communes," *Moreno*, *supra*; mentally disabled persons, *Cleburne*, *supra*; and persons discriminated against based on sexual orientation, *Romer*, *supra*.

1223-24 (10th Cir. 2004) (Supreme Court has never applied an "exacting" rational basis standard, to the extent it is exists under cases like *Cleburne* or *Romer*, *supra*, to economic issues). *See generally Trump v. Hawaii*, 138 S.Ct. at 2420 (discussing *Moreno, Cleburne,* and *Romer*, *supra*, as the "few occasions" where the Court has struck down a policy as illegitimate under rational basis scrutiny). To even imply that businesses like Plaintiffs warrant some heightened protection under the rational basis standard treads far afield of precedent set by the Supreme Court and this Court and incentivizes constitutional complaints by businesses that they are a "politically unpopular group" just because they are the subject of economic regulation. Not only would this intrude on the ability of states to "manag[e] their economies," *see Am. Soc'y of Journalists*, 15 F.4th at 965 (citation omitted), but this would also turn rational basis scrutiny on its head.

## II.  THE PANEL'S RULING THAT THE EXEMPTIONS UNDER AB 5 ARE NOT RATIONALLY RELATED TO ITS PURPOSE CONTRAVENES EQUAL PROTECTION JURISPRUDENCE AND MISCONSTRUES AB 5

Statutory classifications are an "unavoidable component[] of most economic…legislation." *Beach Commc'ns*, 508 U.S. at 316. "[W]here the legislature must necessarily engage in a process of line-drawing," the "restraints on judicial review have added force." *Id.* at 315 (citation omitted). This legislative necessity "renders the precise coordinates of the resulting legislative judgment

9

virtually unreviewable" under the rational basis test. *See id.* at 316 (citation omitted).

Evidencing a decided lack of judicial restraint, the overall thrust of the panel's opinion is that the exemptions under AB 5 are not rationally related to its articulated purpose. *See* 62 F.4th at 1219-20. This conclusion exhibits two significant flaws. First, in refusing to observe the rational relationship between AB 5's exemptions and the statute's legitimate purpose, the panel casts aside decades of precedent set by the Supreme Court and this Court, in favor of second-guessing the legislature's policy choices. Second, the panel's ruling is based on a misapprehension of AB 5's exemptions.

> **A.** **The Panel Disregarded This Court's Previous Ruling That AB 5 Has a Rational Basis, As Well As Longstanding Constitutional Principles Requiring Judicial Deference to Legislative Line-Drawing**

This Court has previously held that "[i]t is certainly conceivable that differences between occupations warrant differently contoured rules [under AB 5] for determining which employment test [the ABC test or the *Borello*[4] test] better accounts for a worker's status…[and] that misclassification was more rampant in certain industries and therefore deserving of special attention." *Am. Soc'y of*

---

[4] *See S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal.3d 341, 350-59 (1989) (discussing multiple factors relevant to the determination of employee or independent contractor status).

*Journalists*, 15 F.4th at 965; *see also Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("Evils in the same field may be of different dimensions and proportions, requiring different remedies"). Thus, this Court's previous ruling that AB 5's statutory distinctions are rationally related to its purpose should govern the equal protection inquiry here.

Nevertheless, in an attempt to distinguish this Court's precedent, the panel relied on "animus." *See* 62 F.4th at 1220. According to the panel, AB 5's exemptions are "starkly inconsistent" with its stated purpose; in particular, Plaintiffs' exclusion from the bill's "wide-ranging" exemptions, when "comparable app-based gig companies" were purportedly included, means the exemptions were based on "animus rather than reason." *Id.* at 1219-20. But this is not so, since plausible reasons exist for AB 5's exemptions.

The legislature drafted AB 5 to apply the ABC test to "employers generally," and to "hundreds of different industries." *Cal. Trucking Ass'n. v. Bonta*, 996 F.3d 644, 658-59 (9th Cir. 2021) (citation omitted); *see also* Cal. Lab. Code § 2775. The legislature noted its concern for industries with "some of the highest misclassification rates." Assemb. Comm. on Lab. & Emp., AB 5, 2019–2020 Reg. Sess., at 2 (Cal. July 5, 2019). But the legislature also crafted exemptions, in which the alternative *Borello* test may apply, to limit interference with true independent contractor relationships. As the legislature explained:

> If…special occupational or industrial rules…are too broad, then AB 5 loses its protective power for workers. If the special rules are drafted too narrowly, then AB 5 risks disrupting longstanding independent contractor relationships...
>
> To thread this needle, AB 5 has focused on occupation-by-occupation rules, placing specific occupations (that in some cases need to meet explicit requirements) under the *Borello* test.

S. Comm. on Lab., Public Emp., and Ret., AB 5, 2019–2020 Reg. Sess., at 8 (Cal. July 8, 2019). Thus, AB 5's overall statutory scheme reflects the legislature's goal of addressing the harms of misclassification, including in industries where the legislature perceived it to be rampant, while also preserving bona fide independent contractor relationships through certain exemptions. This framework presents a "plausible, arguable, or conceivable" basis, *see S.F. Taxi Coal.*, 979 F.3d at 1224 (citation and internal quotations omitted), for *all* of AB 5's statutory distinctions.

The panel's objection that AB 5 "excludes thousands of workers" and exempts other app-based gig companies with "business models that are nearly identical" to Plaintiffs', 62 F.4th at 1219, does nothing to defeat the plausible rationales for AB 5's classifications. That AB 5 may be underinclusive or overinclusive does not violate equal protection. *See Gallinger v. Becerra*, 898 F.3d 1012, 1018 (9th Cir. 2018); *see also Williamson*, 348 U.S. at 489 ("reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind…[and] neglecting…others"). And "courts are

compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 321. "[R]ough accommodations" are constitutionally permissible. *See id.*

The panel also wrongly placed significance on the alleged inequity of allowing an exemption for other "comparable" app-based gig companies, when Plaintiffs are denied one. Statutory distinctions do not fail rational basis review even if they "result[] in some inequality." *Id.* (citation omitted); *see also Beach Commc'ns,* 508 U.S. at 315–16 ("Defining the class of persons subject to a regulatory requirement…inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides" of constitutionally valid line-drawing) (citation and internal quotations omitted)).

Similarly misguided is the panel's assertion that "[t]here is *no indication that many of the workers* in [AB 5's] exempted categories, including those working for the app-based gig companies that are exempted, are *less susceptible*" to misclassification. 62 F.4th at 1219 (emphasis added). Even if this were true, statutory classifications "may be based on rational speculation unsupported by evidence or empirical data."[5] *Heller*, 509 U.S. at 320 (quoting *Beach Commc'ns,*

---

[5]    Nevertheless, we underscore the district court's enumeration of "the sheer number of pre-AB 5 lawsuits against Uber alone [which] indicate[] drivers' and competitors' perception that Uber's drivers are misclassified as independent contractors." *See Olson v. Bonta*, No. CV 19-10956-DMG (RAOx), 2021 WL

508 U.S. at 315)). Indeed, "erroneous" legislative assumptions do not matter under rational basis review. *See Beach Commc'ns*, 508 U.S. at 320 (citation omitted).

Ultimately, Plaintiffs failed to meet their burden to "negate every conceivable basis which might have supported" the distinctions made in AB 5.[6] *See Am. Soc'y of Journalists*, 15 F.4th at 965 (citation omitted). The legislature crafted exemptions based on its assessment of where employee misclassification is prevalent, and what test of employee status should apply to address the harms of misclassification while allowing for legitimate independent contractor relationships.[7] Even if those assumptions were incorrect, or the state could have drawn different or more exact lines, these decisions were properly for the

3474015, at *5 (C.D. Cal. July 16, 2021). Citing *Lawson v. Grubhub, Inc.*, 302 F.Supp.3d 1071 (N.D. Cal. 2018), *vacated and remanded*, 13 F.4th 908 (9th Cir. 2021), the district court also noted "delivery drivers for an app-based food delivery service similar to Postmates have been found to be independent contractors under the *Borello* test" and thus it was rational for the legislature to "surmise that delivery drivers had greater need for a swift change to the ABC test to adequately capture cases of misclassification." *Olson*, 2021 WL 3474015, at *3.

[6]    The district court certainly was able to discern a rational basis for the enactment of AB 5 and its exemption structure. *See Olson*, 2021 WL 3474015, at *2-5.

[7]    As the district court pointed out, "According to the Legislature's framework, similarities in the app-based business model of TaskRabbit, Wag!, Uber, and Postmates are not dispositive of an employer or an independent contractor relationship. Instead, the Legislature's framework focuses on the *services* each company provides to determine if those services tend to be performed by traditional independent contractors and should be exempt from the ABC test under AB 5." *Olson*, 2021 WL 3474015, at *5.

legislature to make, and not for the panel to second guess upon rational basis review. *See id.* ("even if California could have better addressed misclassification some other way, or with greater precision, the Equal Protection Clause does not require it").

**B.** **The Panel's Repudiation of AB 5's Rational Basis Misapprehends How the Statute's Exemptions Function**

Finally, two key aspects of AB 5's exemptions, which the parties have not highlighted, further support why the statute's exemptions hew to the law's legitimate purpose.

First, the *Borello* test is not, as the panel appears to view it, an automatic exemption from employee status. AB 5 provides for the general application of the ABC test to the Labor Code and Unemployment Insurance Code. *See* Cal. Lab. Code § 2775(b). At the same time, the purpose of AB 5 is not to subject *every* worker to the ABC test; its broader purpose, as discussed above, is to address the harms of misclassification, while preserving bona fide independent contractor relationships. Even where the *Borello* test applies through exemptions from the ABC test—and even with *Borello*'s disadvantages as compared to the ABC test, *see Dynamex*, 4 Cal.5th at 954-55—*Borello* is still a test aimed at ferreting out worker misclassification. *See Borello*, 48 Cal.3d at 360 (holding that grower failed to demonstrate workers were independent contractors). And where *Borello* applies,

15

that test is still more protective against misclassification than the rigid common law "control" test. *See id.* at 350-51. Accordingly, the legislature's choice to codify the *Borello* test through AB 5's exemptions, contrary to the assertion that the exemptions exclude workers "from the mandates of AB 5," 62 F.4th at 1219, actually demonstrates that those exemptions adhere to the law's purpose of addressing misclassification.

Second, it is equally critical to understand that where AB 5 provides exemptions from the ABC test, it does not typically do so without first requiring specific criteria to be met, *before* the *Borello* test can even apply. For example, the "referral agency" exemption—a section of the bill that garnered the panel's particular attention, *see* 62 F.4th at 1219-1220—states that the ABC test does not apply to the relationship between a referral agency and a service provider, and *Borello* instead governs, *only if* the referral agency first "demonstrates" that 11 enumerated criteria are satisfied. Cal. Lab. Code § 2777(a). These criteria include, among other things, whether the service provider is free from the control of the referral agency, delivers services under their own name as opposed to the referral agency's name, and sets their own hours and rates of pay, *see id.*, as factors that point toward independent contractor status.[8] In this way, the legislature responded

---

[8]    *See Borello*, 48 Cal.3d at 350-59 (discussing factors distinguishing employees from independent contractors); *Dynamex*, 4 Cal.5th at 962 (noting that "an

to the disadvantages of the *Borello* test—namely, that it is an "all the circumstances" flexible standard, subject to manipulation and inconsistent application because disparate factors could be considered and weighed differently in each case. *See Dynamex*, 4 Cal.5th at 954-55, 964. In the referral agency exemption, the legislature clearly spelled out *which* independent contractor indicia a referral agency must demonstrate to be exempt from the ABC test. This functions to *require* equal consideration of all those threshold indicia, *before Borello* may even be used to ultimately determine whether the service provider is an employee or independent contractor of the referral agency—indicia which may not have been given particular individual weight under the *Borello* test, if the exemption did not codify those indicia. It is certainly conceivable for the legislature to have surmised that this created an additional guardrail against misclassification. If a referral agency can demonstrate every threshold factor, this could provide some assurance, by the time *Borello* is subequently applied to resolve the question of employee status, of the likelihood that the service provider has not been misclassified and is properly characterized as an independent contractor. Conversely, a referral agency

---

individual who *independently* has made the decision to go into business for himself or herself…. generally takes the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like" (emphasis in original)).

that cannot demonstrate all threshold indicia—and therefore may be more likely to have engaged in misclassification—will still be subject to the ABC test.[9] Thus, when properly construed, this exemption on its face reveals a rational relationship to the statute's goal of addressing misclassification while preserving legitimate independent contractor relationships.[10]

---

[9] Despite the panel's assumption that app-based gig companies like Wag! and TaskRabbit are automatically exempted, *see* 62 F.4th at 1219, it is not clear that these companies would necessarily be able to show all the indicia required in order to be exempted from the ABC test.

[10] The same could be said of the other exemptions that include threshold indicia of independent contractor status which must be demonstrated to be exempted from the ABC test, before *Borello* can apply.

## CONCLUSION

*Amici* respectfully urge the Court to grant Defendants' petition for panel rehearing or rehearing *en banc*.

Dated: May 8, 2023

Respectfully submitted,

By: *s/Christina N. Chung*

CHRISTINA N. CHUNG
Center for Law and Work
University of California, Berkeley
School of Law
306 Law Building
Berkeley, CA 94720
(510) 872-2203
christinachung@berkeley.edu

*Attorney for Amici Curiae*

**APPENDIX:**
**LIST OF *AMICI* LABOR AND CONSTITUTIONAL LAW SCHOLARS**

*Amici* law scholars are listed in alphabetical order below. Institutional affiliations are provided for identification purposes only. The views expressed in this brief are those of individual *amici* and do not represent the views or positions of their affiliated institutions.

Catherine Albiston
Jackson H. Ralston Professor of Law
Professor of Sociology
University of California, Berkeley School of Law

Sameer Ashar
Clinical Professor of Law
University of California, Irvine School of Law

Jeremy Blasi
Lecturer in Law
University of California, Los Angeles School of Law

Matthew T. Bodie
Robins Kaplan Professor
University of Minnesota Law School

Erwin Chemerinsky
Dean and Jesse H. Choper Distinguished Professor of Law
University of California, Berkeley School of Law

Roberto L. Corrada
Mulligan Burleson Chair and Professor of Law
University of Denver Sturm College of Law

Marion Crain
Wiley B. Rutledge Professor of Law
Washington University in St. Louis School of Law

20

Matthew Dimick
Professor of Law
University at Buffalo School of Law

Veena Dubal
Professor of Law
University of California, Hastings College of Law

Cynthia Estlund
Catherine A. Rein Professor of Law
New York University School of Law

Catherine Fisk
Barbara Nachtrieb Armstrong Distinguished Professor of Law
University of California, Berkeley School of Law

Paul L. Frieden
Professorial Lecturer in Law
The George Washington University Law School

Ruben J. Garcia
Professor of Law
Co-Director, Workplace Law Program
William S. Boyd School of Law at UNLV

Charlotte Garden
Julius E. Davis Professor of Law
University of Minnesota Law School

Joseph R. Grodin
Distinguished Professor Emeritus
University of California, Hastings College of Law
Associate Justice California Supreme Court (ret)

Jonathan F. Harris
Associate Professor of Law
LMU Loyola Law School Los Angeles

Anne Marie Lofaso
Arthur B. Hodges Professor of Law
West Virginia University College of Law

Eli Naduris-Weissman
Lecturer in Law
University of California, Irvine School of Law

Victor Narro
Core Faculty, Public Interest Law and Policy Program
University of California, Los Angeles School of Law

Michael Oswalt
Professor of Law
Wayne State University Law School

Seema Patel
Lecturer in Law
University of California, Berkeley School of Law

Sanjukta Paul
Professor of Law
University of Michigan Law School

Brishen Rogers
Professor of Law
Georgetown University Law Center

Courtlyn Roser-Jones
Assistant Professor of Law
Moritz College of Law

Leticia Saucedo
Professor of Law
University of California, Davis School of Law

Michael J. Wishnie
William O. Douglas Clinical Professor of Law
Yale Law School

Noah D. Zatz
Professor of Law
University of California, Los Angeles School of Law

Rebecca E. Zietlow
Associate Dean for Academic Affairs
Distinguished University Professor
Charles W. Formoff Professor of Law and Values
University of Toledo College of Law

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  21-55757

I am the attorney or self-represented party.

**This brief contains** ___4,135___ **words,** including ___0___ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/Christina N. Chung_____ **Date** __May 8, 2023_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                           *Rev. 12/01/22*