No. 21-55757

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

───────────────

LYDIA OLSON, et al.,

*Plaintiffs-Appellants*,

v.

STATE OF CALIFORNIA, et al.,

*Defendants-Appellees.*

───────────────

On Appeal from the United States District Court
for the Central District of California
Case No. 2:19-cv-10956-DMG-RAO | Hon. Dolly M. Gee

───────────────

## PLAINTIFFS-APPELLANTS' SUPPLEMENTAL
## EN BANC REPLY BRIEF

───────────────

Joseph E. Barakat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: 214.698.3301

Theane D. Evangelis
Blaine H. Evanson
Alexander N. Harris
Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
tevangelis@gibsondunn.com

───────────────

*Attorneys for Plaintiffs-Appellants Lydia Olson, Miguel Perez,
Postmates Inc., and Uber Technologies, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................... 1

ARGUMENT ............................................................................... 2

I.    The State Still Has Not Provided a Rational Explanation for AB5's Classifications ............................................................ 2

II.   The State's Extrarecord Materials Provide No Basis for Affirmance ..................................................................... 13

III.  This Court Should Reject the State's Invitation to Overrule Precedent, Buck Supreme Court Authority, and Create a Circuit Split ..................................................................... 18

CONCLUSION .......................................................................... 21

CERTIFICATE OF COMPLIANCE ........................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aleman v. Glickman*,
  217 F.3d 1191 (9th Cir. 2000) ............................................................. 17

*Allied Concrete & Supply Co. v. Baker*,
  904 F.3d 1053 (9th Cir. 2018) ....................................................... 14, 19

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*,
  15 F.4th 954 (9th Cir. 2021) ............................................................ 9, 19

*Angelotti Chiropractic, Inc. v. Baker*,
  791 F.3d 1075 (9th Cir. 2015) ............................................................. 17

*Boardman v. Inslee*,
  978 F.3d 1092 (9th Cir. 2020) ............................................................. 11

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ............................................................................. 11

*City of New Orleans v. Dukes*,
  427 U.S. 297 (1976) ............................................................................. 18

*Craigmiles v. Giles*,
  312 F.3d 220 (6th Cir. 2002) ............................................................... 19

*Fed. Energy Admin. v. Algonquin SNG, Inc.*,
  426 U.S. 548 (1976) ............................................................................. 12

*Fowler Packing Co. v. Lanier*,
  844 F.3d 809 (9th Cir. 2016) ............................................... 2, 3, 13, 20

*Gallinger v. Becerra*,
  898 F.3d 1012 (9th Cir. 2018) ............................................................. 17

*Hous. Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022) ............................................................................. 13

*Hu v. City of New York,*
927 F.3d 81 (2d Cir. 2019) ................................................... 16

*Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.,*
916 F.2d 1174 (7th Cir. 1990)........................................ 15, 16

*Kahawaiolaa v. Norton,*
386 F.3d 1271 (9th Cir. 2004)........................................... 17

*Kenna v. U.S. Dist. Court,*
435 F.3d 1011 (9th Cir. 2006)........................................... 12

*Lacey v. Maricopa County,*
693 F.3d 896 (9th Cir. 2012)............................................. 16

*Lazy Y Ranch Ltd. v. Behrens,*
546 F.3d 580 (9th Cir. 2008)...............................3, 13, 16, 18

*McCreary County v. Am. Civ. Liberties Union of Ky.,*
545 U.S. 844 (2005) ....................................................... 12

*Merrifield v. Lockyer,*
547 F.3d 978 (9th Cir. 2008)...........................2, 3, 18, 19, 20

*Minnesota v. Clover Leaf Creamery Co.,*
449 U.S. 456 (1981)................................................... 14, 15

*Quinn v. LPL Fin. LLC,*
91 Cal. App. 5th 370 (2023) ............................................... 9

*S.F. Taxi Coal. v. City & County of San Francisco,*
979 F.3d 1220 (9th Cir. 2020)........................................... 19

*Sanchez v. Off. of State Superintendent of Educ.,*
45 F.4th 388 (D.C. Cir. 2022) ............................................. 3

*Sportsman v. A Place for Rover, Inc.,*
537 F. Supp. 3d 1081 (N.D. Cal. 2021)................................. 8

*St. Joseph Abbey v. Castille,*
712 F.3d 215 (5th Cir. 2013)........................................ 11, 19

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................ 10

*Taylor v. Rancho Santa Barbara*,
  206 F.3d 932 (9th Cir. 2000) ............................................ 17

*Tiwari v. Friedlander*,
  26 F.4th 355 (6th Cir. 2022) ............................................ 19

*U.S. Dep't of Agric. v. Moreno*,
  413 U.S. 528 (1973) ...................................................... 11, 19

*United States v. Carolene Prods. Co.*,
  304 U.S. 144 (1938) ............................................................ 14

*United States v. Gillock*,
  445 U.S. 360 (1980) ............................................................ 13

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ............................................ 14

*Vance v. Bradley*,
  440 U.S. 93 (1979) ............................................................ 15

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000) ...................................................... 13, 16

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ............................................ 15

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993) ............................................................ 13

*Zenelaj v. Handybook Inc.*,
  82 F. Supp. 3d 968 (N.D. Cal. 2015) .................................... 8

## Statutes

Cal. Lab. Code § 2777 ...................................................... 5, 6, 9

Cal. Lab. Code § 2781 ............................................................ 5

iv

Cal. Lab. Code § 2783 ............................................................................ 5, 9

**Other Authorities**

First Am. Compl., *Darsey v. Wag Labs, Inc.*,
    No. 2:17-cv-07014 (C.D. Cal. Sept. 22, 2017), Dkt. 30 ......................... 8

Nat'l Emp. L. Project, *About NELP*,
    https://www.nelp.org/about-us/ (last visited Feb. 19, 2024) .............. 14

Order Granting Preliminary Approval of Class Action and
    PAGA Settlement, *Finholt v. TaskRabbit, Inc.*,
    No. BC722869 (Cal. Super. Ct. Aug. 17, 2020) .................................... 8

Pet. for Writ of Administrative Mandate, *TaskRabbit, Inc. v.*
    *Cal. Unemployment Ins. Appeals Bd.*,
    No. CPF-16-515405 (Cal. Super. Ct. Dec. 15, 2016) ............................ 8

## INTRODUCTION

The State has now filed ten briefs and presented at three arguments in this action—and still has not offered a rational explanation for AB5's byzantine classifications. The State asserts an overarching justification for the law: that AB5 "makes it more difficult for employers to evade labor requirements" by replacing the "complex and manipulable" *Borello* standard with the "simpler, more structured" ABC test. State Supp. Br. 1, 11–12. But the State addresses only one half of AB5 (the establishment of a new standard), while ignoring the other half (the numerous exemptions that draw nonsensical lines between similarly situated parties, including Plaintiffs). It is the *system of exemptions*— and not just the establishment of a new standard—that must be rationally related to a legitimate governmental interest. The complaint's allegations, taken as true, establish that it is not.

The State's brief suffers from three major flaws. First, the State nowhere offers a legitimate justification for the complaint's allegations of irrational targeting, which can be explained only by animus and political favoritism. Second, the State seeks to credit an eclectic mix of extrarecord materials (ranging from advocacy think pieces to student

1

literature) above the complaint's well-pleaded allegations based on a limitless understanding of legislative facts. Third, the State fails to explain how an affirmance here could coexist with *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008), and *Fowler Packing Co. v. Lanier*, 844 F.3d 809 (9th Cir. 2016)—much less align with established Supreme Court precedent and longstanding authority in other circuits. This Court should (like the panel) reverse the dismissal of the equal-protection claim and allow Plaintiffs their day in court.

## ARGUMENT

### I. The State Still Has Not Provided a Rational Explanation for AB5's Classifications

Even when "economic rights are at stake," laws must be rationally related to a legitimate governmental interest. *Merrifield*, 547 F.3d at 992. That well-settled principle dictates reversal of the district court's dismissal of the complaint because (A) AB5 draws lines that cannot be explained (B) apart from animus or political favoritism.

A. In positing that AB5 rationally tailors the classification standard to the risk of misclassification (State Supp. Br. 10–17), the State refuses to confront the complaint's allegations and overlooks the governing pleading standard. A challenger ultimately bears the burden

of negating "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fowler Packing*, 844 F.3d at 815. But at the motion-to-dismiss stage, the court's "inquiry" is necessarily "limited" to assessing the law's rational basis against "the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *accord Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 396 (D.C. Cir. 2022).

Across 89 pages and 285 paragraphs, the complaint traces the legislature's circuitous path—extending a new standard broadly, exempting referral agencies, and then specifically excluding network companies from that exemption—to target network companies, while currying support among similarly situated political favorites.  2-ER-47–48, 2-ER-88–90, 2-ER-92, 2-ER-113–14 (SAC ¶¶ 7–10, 101–06, 113–14, 182–83).  The complaint demonstrates that this irrational patchwork of exemptions "undercut[s] [AB5's] own rational basis." *Merrifield*, 547 F.3d at 992.  And the complaint details that animus and political favoritism are the only conceivable explanations for these exemptions.  2-ER-65–85, 2-ER-113, 2-ER-115–17 (SAC ¶¶ 63–94, 180, 187, 190–93).

The State chocks up the irrational line-drawing as "incremental[]" legislation. State Supp. Br. 10, 31 n.23. But the statutory design and legislative history refute that characterization. AB5 was a comprehensive reform of employment-classification tests across *every* occupation that did not "[l]eave[] [e]xisting [l]aw in [p]lace" for *anyone*. *Id.* at 13. The legislature slanted the classification standard toward employee status for the covered industries and tipped the standard back toward independent-contractor status for the exempted industries, even though they were previously subject to the ABC test for wage-order claims under *Dynamex*. 2-ER-64 (SAC ¶ 62).

To state the obvious, reinstituting *Borello* for exempted entities previously subject to *Dynamex* is not a rational means of replacing the "complex and manipulable" *Borello* standard with the "simpler, more structured" ABC test. State Supp. Br. 11–12. After widening the gap between the two camps, the legislature then divvied up similarly situated industries based on arbitrary and politically motivated distinctions. Casting a wide net, releasing one's friends, and keeping one's foes is the opposite of incremental.

4

The State offers a maxim to justify this differential treatment: The legislature included industries wherever a risk of misclassification existed and exempted them whenever the "Legislature reasonably perceived little … risk." State Supp. Br. 10, 13. But that directly contradicts the complaint's well-pleaded allegations. For example:

- Despite recognizing that "newspapers ha[d] lost nearly every case brought by carriers under *Borello*" and that the exemption would lead to the "continue[d] misclassif[ication]" of "historically misclassified" workers, such as "women of color," the legislature added an exemption for newspaper distributors and carriers "as a condition of AB5's passage." 2-ER-76–77 (SAC ¶ 81) (Assemblymember Gonzalez); Cal. Lab. Code § 2783(h).

- The legislature likewise exempted workers in many "growth industries" that it specifically flagged as having "some of the highest misclassification rates … in the economy[]" (2-ER-49, 2-ER-63–64, 2-ER-68–69 (SAC ¶¶ 11, 59, 62, 68))—including workers in the hospitality industry (Cal. Lab. Code § 2777(b)(2)(B)) and construction truckers and subcontractors (*id.* § 2781).

- The legislature gave a free pass to yard workers, picture hangers, and furniture assemblers, who boast no higher "barriers to entry" than do Plaintiffs. State Supp. Br. 14–15; 2-ER-69 (SAC ¶ 69).

In other words, the complaint pleads directly and thoroughly that the legislature did *not* draw lines based on the actual risk of misclassification; it drew lines arbitrarily, irrationally, and based on animus and political favoritism. And the State's only answer—like the district court's—is to deny the facts that Plaintiffs have pleaded.

The referral-agency exemption brings the legislature's irrational targeting into sharp relief. After the district court observed that Plaintiffs "would likely fall under" the exemption (2-ER-197 (Prelim. Inj. Hr'g Tr. at 9:5–7)), the legislature acted swiftly to *carve out* courier and transportation companies—while simultaneously *expanding* the exemption to include *all* other types of commercial matchmakers (Cal. Lab. Code § 2777(b)(2)(B)–(C)). The legislature did so with retroactive effect to ensure there would be no way for "Uber [to] just say" that it *ever* fit within the exemption (2-ER-83–84 (SAC ¶ 92))—as Uber had been doing in defending against the State's enforcement action (2-ER-092 (SAC ¶ 113)). The upshot is that TaskRabbit and Wag! can claim the

6

exemption, but Uber and Postmates cannot—despite having "nearly identical business models." 2-ER-47–48, 2-ER-74–75, 2-ER-88–89 (SAC ¶¶ 8–10, 77, 102–04).

The State's response to this irrational treatment misses the point. As the State observes, TaskRabbit and Wag! will qualify under the exemption only if they "satisf[y] a long list of requirements"—a feat that they may or may not ultimately accomplish. State Supp. Br. 20–21. The complaint alleges that network companies can satisfy these requirements just as easily as TaskRabbit and Wag! (2-ER-48, 2-ER-72–75, 2-ER-88–89 (SAC ¶¶ 10, 74–77, 103–04)), which means the State's argument fails on its own terms. But the State never answers the more fundamental question: Why does the "long list of requirements" identify valid referral-agency arrangements when a company refers someone to walk a dog but not drive a car? That Plaintiffs might fail to satisfy the exemption's requirements is no basis to prevent them from even attempting to do so on equal terms with similarly situated parties.

The State contends that the courier and transportation carveout from the referral-agency exemption was a necessary "prophylactic" to ensure "that businesses in high-misclassification industries" could not

"circumvent application of the ABC test." State Supp. Br. 19–20. Yet again, the State disregards the complaint's well-pleaded allegations that network companies properly classified drivers as independent contractors under then-existing law—as numerous courts and regulators had found. 2-ER-63–64 (SAC ¶ 61); Appellants' Reply Br. 17–18, *Olson v. California*, No. 20-55267 (9th Cir. July 27, 2020) (collecting cases). And it ignores that Wag! and TaskRabbit both faced similar misclassification suits under *Borello*, belying any claim that network companies were more prone to misclassify.\*

The State also studiously avoids Plaintiffs' allegations that they are similarly situated to many exempted workers in all relevant respects. The complaint avers that workers who use network companies' apps can set their rates by leveraging offers from "multiple competitor apps simultaneously to maximize income" (2-ER-57, 2-ER-70, 2-ER-71–72,

---

\* *E.g.*, First Am. Compl. ¶¶ 4, 38, *Darsey v. Wag Labs, Inc.*, No. 2:17-cv-07014 (C.D. Cal. Sept. 22, 2017), Dkt. 30; Order Granting Preliminary Approval of Class Action and PAGA Settlement, *Finholt v. TaskRabbit, Inc.*, No. BC722869 (Cal. Super. Ct. Aug. 17, 2020); Pet. for Writ of Administrative Mandate ¶¶ 1, 19, *TaskRabbit, Inc. v. Cal. Unemployment Ins. Appeals Bd.*, No. CPF-16-515405 (Cal. Super. Ct. Dec. 15, 2016); *see also*, *e.g.*, *Sportsman v. A Place for Rover, Inc.*, 537 F. Supp. 3d 1081, 1085 (N.D. Cal. 2021); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 970 (N.D. Cal. 2015).

2-ER-103 (SAC ¶¶ 41, 70, 73, 140)); can choose how to perform services "free from the direction and control of network companies" (2-ER-71–72, 2-ER-109 (SAC ¶¶ 73, 167)); and can develop their own clientele (2-ER-74–75, 2-ER-89 (SAC ¶¶ 77, 104)). And performing delivery and transportation services via Plaintiffs' apps certainly entails no more costs or danger than other exempted occupations—like "moving," "home repair," or "commercial fish[ing]." Cal. Lab. Code §§ 2777(b)(2)(B), 2783(g); 2-ER-115–16 (SAC ¶ 189).

The legislature's irrational targeting of network companies starkly distinguishes *American Society of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954 (9th Cir. 2021), and *Quinn v. LPL Finance LLC*, 91 Cal. App. 5th 370 (2023). In both cases, different aspects of AB5 survived constitutional challenge because journalists and finance professionals were not subjected to irrational treatment. But the fact that *others* might have received equal protection of law under AB5 does not somehow obviate the constitutional violation alleged here. *See* Owner-Operator Independent Drivers Br. 11–13.

The State also argues that Plaintiffs lack standing to challenge the "scope" of other exemptions. State Supp. Br. 27. This argument only

9

reinforces that *American Society of Journalists* and *Quinn* addressed fundamentally different claims from the one here. Especially because the State continues to press its enforcement action against Uber under AB5 (2-ER-46, 2-ER-99 (SAC ¶¶ 4, 132)), Plaintiffs have a "personal stake in the outcome of th[is] controversy" and standing to challenge the statute's enforcement (*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

B. The complaint's allegations support only two conceivable bases for AB5's irrational line-drawing: animus towards network companies and favoritism towards lobbying groups. The legislature subjected network companies to the stringent ABC test, while permitting similarly situated gig-economy companies to qualify for the *Borello* test. 2-ER-69–72, 2-ER-88–89 (SAC ¶¶ 69–73, 103–04). The legislature solicited "opt out" forms from any business requesting an exemption (2-ER-77 (SAC ¶ 83)) but adamantly refused to consider one for "app-based ride-hailing and delivery giants" (2-ER-80 (SAC ¶ 85)). And the legislature publicly lambasted network companies for propagating "feudalism" and the "continuation of hundreds of years of corporations

trying to screw over workers." 2-ER-50, 2-ER-80 (SAC ¶¶ 13, 86) (Assembly Speaker Rendon).

The State tries to sweep statements of animus under the rug, urging the Court to ignore the legislative record. State Supp. Br. 34–35. But the Constitution "does not demand judicial blindness to the history of a challenged rule or the context of its adoption." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013). Rather, courts may consider "disparate impact on a particular group, departures from the normal procedural sequence, and contemporary statements by members of the decisionmaking body" as indicia of animus. *Boardman v. Inslee*, 978 F.3d 1092, 1119 (9th Cir. 2020) (quotation marks omitted). That is true for rational-basis claims (*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)), as for other constitutional claims (*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993)).

For its part, the United States is wrong to discount the legislative record as merely reflecting the personal biases of AB5's "sponsor." U.S. Br. 6. The Supreme Court has given statements of "the legislation's sponsors … substantial weight in interpreting the" legislature's intent. *Fed. Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 564 (1976);

*see, e.g.*, *McCreary County v. Am. Civ. Liberties Union of Ky.*, 545 U.S. 844, 862 (2005). And as this Court has noted, the sponsor's statements carry even more weight "where, as here, other legislators did not offer any contrary views" to counterbalance those marred with animus. *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1015 (9th Cir. 2006).

The State also attacks a strawman argument that Plaintiffs have never made: that the legislature would no longer be free to mention specific companies as "'examples of a larger problem'" without running afoul of the Equal Protection Clause. State Supp. Br. 34. Of course the legislature can use examples (think Enron) to motivate generally applicable laws (think Sarbanes-Oxley). But what the legislature *cannot* do is target network companies with a laser focus, while doling out exemptions to other similarly situated entities. That is what Plaintiffs have plausibly alleged, and those allegations must be taken as true.

The State concludes by suggesting that the First Amendment somehow prevents Plaintiffs from citing legislators' public statements as evidence of animus. State Supp. Br. 34–35. That is wrong at every level. The First Amendment does not prevent litigants from using speech as evidence. *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). State

legislators have no evidentiary privilege that bars their statements' admission. *United States v. Gillock*, 445 U.S. 360, 374 (1980). And "[i]n this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022).

## II. The State's Extrarecord Materials Provide No Basis for Affirmance

Given the damning allegations of arbitrary treatment, the State never even engages in the pretense of accepting the complaint's allegations as true—despite black-letter law that factual allegations are taken as true when applying rational-basis review. *E.g.*, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (per curiam); *Fowler Packing*, 844 F.3d at 814; *Lazy Y Ranch*, 546 F.3d at 588. The State seemingly relies on everything *but* the complaint, citing (among other things) a student note (State Supp. Br. 20, 23–24), policy statements from an advocacy group (*id.* at 10, 15–17), and evidentiary materials submitted only as to the motion for preliminary injunction (*id.* at 23).

The State never argues that any of these extrarecord sources are incorporated by reference in the complaint or satisfy the stringent requirements for judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Instead, it purports to have uncovered "legislative facts" (State Supp. Br. 26) in the far-flung pages of student-run journals and on the website of the National Employment Law Project, a self-described "advocacy organization" (Nat'l Emp. L. Project, *About NELP*, https://www.nelp.org/about-us/ (last visited Feb. 19, 2024)).

Legislative facts are not whatever seems relevant to a governmental litigant while surfing the web or googling for law-review articles about Uber. If the State means to argue that the legislature made a rational judgment based on the evidence presented to it, then that is what the State must demonstrate: that the evidence was actually "presented to [the legislature]" or satisfies the requirements for "judicial notice." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938)); *see*, *e.g.*, *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1061 (9th Cir. 2018).

14

The State will have that opportunity during discovery. But the Supreme Court has cautioned that reliance on legislative facts may not be appropriate "on the pleadings." *Clover Leaf*, 449 U.S. at 464 n.8. And the Seventh Circuit has similarly concluded that "[i]f facts critical to a decision on whether [a particular legal standard should apply] cannot be determined with reasonable accuracy without an evidentiary hearing, such a hearing can and should be held." *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990). The State cannot just cherry-pick the online sources nearest at hand for its appellate brief.

The State also tries to expand the category of legislative facts to include "historical fact[s]," which even the State recognizes would be improper. State Supp. Br. 25–26 (quoting *Vance v. Bradley*, 440 U.S. 93, 111 (1979)). Some legislative facts are truisms—for example, "that aging—almost by definition—inevitably wears us all down." *Vance*, 440 U.S. at 112. Others are well-known historical events—for example, that American troops "discovered large stashes of Nazi-looted art" during World War II. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960, 962 (9th Cir. 2010). These universal propositions form a backdrop against which legislatures can rationally make statutory

15

classifications. But an overly broad conception of legislative facts would encourage judges to find facts based on preconceptions, thereby removing factual disputes from the adjudicative process. *See Ind. Harbor Belt*, 916 F.2d at 1182.

The State pushes the concept of legislative facts well beyond its limits in trying to preempt litigation of the hotly disputed factual question whether Uber and Postmates presented greater risks of misclassification than did Wag! and TaskRabbit. State Supp. Br. 23–25. Whether two parties are similarly situated is a question of fact generally not suited for a motion to dismiss, let alone for extrarecord sleuthing on appeal. *E.g.*, *Lacey v. Maricopa County*, 693 F.3d 896, 921 (9th Cir. 2012); *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019). That is true (*contra* U.S. Br. 8–9) regardless whether the claim proceeds on a "class of one" theory. *Lazy Y Ranch*, 546 F.3d at 590–92; *accord Olech*, 528 U.S. at 565 n.1 ("the number of individuals in a class is immaterial for equal protection analysis").

The State does not cite a single case approving its kitchen-sink approach to legislative facts. Most of its cases involve legislative reports, which (needless to say) are before the legislature at the time of enactment

16

and therefore are permissible. *See Gallinger v. Becerra*, 898 F.3d 1012, 1020 (9th Cir. 2018); *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1087–88 (9th Cir. 2015); *Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 937 (9th Cir. 2000). Plaintiffs agree this Court can review legislative reports—indeed, the complaint discusses several reports showing that AB5's exemptions undercut its stated bases. 2-ER-63, 2-ER-68–71 (SAC ¶¶ 59, 68–71).

None of the State's cited authorities used extrarecord sources to resolve factual disputes *about* the plaintiffs, as the State attempts to do here. One cited a law-review article in discussing legal issues but didn't purport to use it to resolve factual disputes. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1283 (9th Cir. 2004). And only one decision (*Aleman v. Glickman*, 217 F.3d 1191 (9th Cir. 2000)) cited a source that postdated the challenged law's enactment for a factual issue—and even there, this Court relied on the source only for the uncontested across-the-board amount of monthly benefits under the federal food-stamp program (*id.* at 1203).

In short, the State's use of extrarecord materials conflicts with precedent and, if endorsed by this Court, would severely dilute rational-

basis review. Existing precedent gives plaintiffs an opportunity "to rebut the facts underlying defendants' asserted rationale for a classification." *Lazy Y Ranch*, 546 F.3d at 590–91. But if the State were right, a defendant could trawl online for something—anything—to toss into its motion to dismiss before the plaintiff has had a chance to engage in discovery. That is not how legislative facts work.

## III. This Court Should Reject the State's Invitation to Overrule Precedent, Buck Supreme Court Authority, and Create a Circuit Split

The State's position cannot be squared with two of this Court's important equal-protection decisions: *Merrifield* and *Fowler Packing*. The State tries to downplay and overrule *Merrifield*, while doing its best to ignore *Fowler Packing* altogether. Its indirect responses confirm that longstanding precedent precludes dismissal here.

To start, the State argues that *Merrifield* was "wrongly decided" and suggests "[t]he en banc Court may wish to consider overruling" it. State Supp. Br. 30–31. But *Merrifield* dutifully followed the Supreme Court's manual on rational-basis review. While recognizing that "[l]egislatures may implement their program step by step" (547 F.3d at 989 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976))),

this Court made clear that a law cannot withstand review when "the state's own rationale" for the law defeats the rationale for an exemption (*id.* at 991). Any other result would have marked a retreat from Supreme Court precedent (*Moreno*, 413 U.S. at 537–38) and spawned a circuit split to boot (*Craigmiles v. Giles*, 312 F.3d 220, 227–29 (6th Cir. 2002)).

The State invites the Court to overrule *Merrifield* because "subsequent panels have taken pains to limit its holding." State Supp. Br. 30. But this Court has never abandoned the axiomatic principle that an exemption is irrational when it undercuts the law's only legitimate basis. Many of the cases the State cites say just that. *Am. Soc'y of Journalists*, 15 F.4th at 965–66; *S.F. Taxi Coal. v. City & County of San Francisco*, 979 F.3d 1220, 1224–25 (9th Cir. 2020); *Allied Concrete*, 904 F.3d at 1065–66. Overruling *Merrifield* would be an avulsive change to this Court's equal-protection doctrine and would create a rift with other circuits that have subsequently embraced *Merrifield*. *E.g.*, *Tiwari v. Friedlander*, 26 F.4th 355, 368 (6th Cir. 2022); *St. Joseph Abbey*, 712 F.3d at 222 & n.38.

The State hedges with a half-hearted suggestion that the district court's dismissal was consistent with *Merrifield*. State Supp. Br. 31–32.

19

But its arguments miss the fundamental parallel between the cases, which both involve legislative exemptions that countermand the law's only rational basis. *Merrifield* addressed an exemption for pest controllers who were most likely to use pesticides, thus undermining "[o]ne of the principal bases" for the legislation—that regulated controllers might encounter dangerous pesticides. State Supp. Br. 31. AB5 likewise undercuts its principal basis—that *Borello* is too flexible and easy to meet—by reinstating *Borello* for the millions of workers who received an exemption. If *Borello* provides too little scrutiny or too little certainty for Uber, then it also does for the exempted industries. 2-ER-48, 2-ER-89 (SAC ¶¶ 10, 104). As in *Merrifield*, the Court "cannot simultaneously uphold the [ABC test] based on one rationale and then uphold [app-based drivers'] exclusion from the exemption based on a completely contradictory rationale." 547 F.3d at 991.

The State describes *Fowler Packing* as holding "that legislation fails rational-basis review if its 'only conceivable [basis]' is to arbitrarily target certain individuals or businesses to 'procure the … support' of powerful interest groups." State Supp. Br. 33 (quoting 844 F.3d at 816). Although the State asserts "that is far from the only conceivable basis for

20

AB 5 and its exemptions" (*id.*), this case involves the same allegations of irrational targeting and political favoritism that survived a motion to dismiss in *Fowler Packing* (*see supra*, at 3–6). So the State, again, can support its position only by adopting a counter-narrative that contradicts the complaint's well-pleaded allegations.

## CONCLUSION

The Court should reverse the dismissal of the equal-protection claim.

Dated: February 19, 2024        Respectfully submitted,

*/s/ Theane D. Evangelis*
Theane D. Evangelis
Blaine H. Evanson
Alexander N. Harris
Patrick J. Fuster
Joseph E. Barakat

*Attorneys for Plaintiffs-Appellants*
*Lydia Olson, Miguel Perez,*
*Postmates Inc., and Uber*
*Technologies, Inc.*

21

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Fed. R. App. P. 32(a) and Ninth Circuit Rule 32-1(e), the attached response is proportionately spaced, has a typeface of 14 points, and complies with the word limitations established by the Court's January 11, 2024 order granting the State's motion for supplemental briefing (Dkt. 72) because it contains 3,983 words.

Dated: February 19, 2024

*/s/ Theane D. Evangelis*
Theane D. Evangelis

*Attorney for Plaintiffs-Appellants*
*Lydia Olson, Miguel Perez,*
*Postmates Inc., and Uber*
*Technologies, Inc.*